Filed 9/3/14; pub. & mod. order 10/2/14 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| WAYNE EARL LARSON,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>UHS OF RANCHO SPRINGS, INC., et al.,<br><br>    Defendants and Respondents. | G050081<br><br>(Super. Ct. No. RIC1216315)<br><br>O P I N I O N |

        Appeal from judgments of the Superior Court of Riverside County, Matthew C. Perantoni and Gloria Trask, Judges.  Affirmed.

        Law Office of Zulu Ali, Zulu Ali and Maleha Khan-Avila for Plaintiff and Appellant.

        Walker & Mann, Jeffrey A. Walker, Douglas K. Mann and Jean K. Bak for Defendant and Respondent Richard Shuman.

        Dummit, Buchholz & Trapp, Scott D. Buchholz, William R. Moore and Amanda N. McCarty for Defendant and Respondent UHS of Rancho Springs, Inc.

           \*          \*          \*

In this appeal, we must decide whether a plaintiff's claims for battery and intentional infliction of emotional distress are based on a health care provider's professional negligence and therefore subject to the one-year limitations period set forth in Code of Civil Procedure section 340.5.[1] Plaintiff and appellant Wayne Earl Larson alleges defendant and respondent Richard Shuman, M.D., served as the anesthesiologist on Larson's kidney stone surgery performed at defendant and respondent UHS of Rancho Springs, Inc.'s (UHS) hospital. In performing a preoperative checkup and administering the anesthesia, Larson alleges Shuman committed a battery and intentionally inflicted severe emotional distress by grabbing and twisting Larson's arm, prying open his mouth, and lifting, pulling, and pushing on his face and head. The trial court sustained Shuman's and UHS's demurrers without leave to amend on the ground section 340.5's one-year limitation period applied and barred Larson's claims.

Larson appeals, arguing the two-year limitations period generally applicable to personal injury claims governs because he alleged intentional tort claims, not claims for professional negligence. As explained below, we disagree with Larson's contention and affirm the trial court's judgment because we must look past the labels Larson uses and examine the specific conduct Larson alleged to determine which limitations period applies. Larson bases his lawsuit on Shuman's conduct in providing professional health care by performing a preoperative checkup and administering anesthesia. Larson does not allege any other purpose for the challenged conduct. Because his claims constitute a challenge to how Shuman performed his professional services, Larson's claims are based on professional negligence and barred by section 340.5's one-year limitations period.

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise stated.

# I

## FACTS AND PROCEDURAL HISTORY[2]

In September 2011, Larson filed an earlier action (Earlier Action) to recover for injuries he allegedly sustained while he was a patient at UHS's hospital. Larson's complaint in the Earlier Action asserted claims for medical negligence, professional negligence, battery, and intentional infliction of emotional distress against UHS and Shuman. The complaint alleged Larson admitted himself to UHS's hospital to undergo surgery for kidney stones and Shuman was the anesthesiologist who "assist[ed]" with the surgery. Larson alleged Shuman "forcefully grabb[ed]" and "unnecessarily twisted" his arm during "his pre-operative check up," "forcefully pried open [Larson's] mouth without first asking him to open [it]," "abruptly lifted [Larson's] chin," "violently pushed [Larson's] head back on the bed in an effort to put on [Larson's] mask to administer the anesthesia," and Shuman "again pressed strongly once more before [Larson] became unconscious." Larson alleged when he awoke from kidney stone surgery, "his face was badly bruised, swollen, and sore." Finally, Larson alleged he filed a complaint with UHS and also a police report based on the treatment he received from Shuman.

In November 2011, Larson filed a first amended complaint in the Earlier Action. The amended pleading dropped the claims for medical negligence and professional negligence, but alleged claims for assault, battery, and intentional infliction of emotional distress. The pleading continued to allege Shuman served as the anesthesiologist for Larson's surgery. Larson also continued to allege that, "[p]rior to the

---

        2       Because this appeal follows the sustaining of a demurrer, we summarize the underlying facts as alleged in the complaint and include additional facts subject to judicial notice. (*Rosen v. St. Joseph Hospital of Orange County* (2011) 193 Cal.App.4th 453, 456 (*Rosen*).)

surgical procedure," Shuman "twisted [Larson's] arm to check up on him and pried open his mouth"; Shuman "lifted [Larson's] chin in an abrupt manner, hurting [Larson's] neck and chin"; Shuman "pushed [Larson's] head against the bed to the point where his neck started hurting"; "Shuman's hand continually pressed hard on [Larson's] upper chin and lip area"; and Shuman "pushed [Larson's] face again before [Larson] became unconscious." As a consequence, Larson "woke up with bruises on his face, and a swollen upper lip." Finally, Larson alleged he filed a complaint with UHS and a police report in November 2010.

Shuman and UHS separately demurred to the first amended complaint in the Earlier Action. The trial court sustained both demurrers with leave to amend on the ground Larson failed to allege sufficient facts to show he did not consent to Shuman's conduct because the alleged injuries occurred as Shuman provided medical care. Rather than amend his pleading, however, Larson voluntarily dismissed the Earlier Action without prejudice in March 2012.

Eight months later Larson filed this action. The complaint alleges claims for battery and intentional infliction of emotional distress against Shuman and UHS, but omits many of the specific facts Larson alleged in the Earlier Action. The claims against Shuman simply allege he "forcefully grabbed [Larson's] arm, pried open [his] mouth, violently punched, lifted and grabbed [Larson's] chin, face and mouth," and Larson "suffered pain, bruising, swelling, soreness and emotional trauma and distress." The claims against UHS include the same allegations. Larson also alleged Shuman "was acting as an agent and/or employee of [UHS] and within the scope of his agency and/or employment in that the harmful conduct occurred during preparation for [Larson's] medical procedure."

Shuman and UHS demurred and moved to strike portions of Larson's complaint on the grounds the claims were time-barred, Larson failed to allege sufficient facts to state a cause of action, and Larson failed to obtain a court order authorizing him

4

to seek punitive damages against a health care provider.  In support, Shuman and UHS asked the court to judicially notice Larson's two complaints, the demurrers, a notice of ruling, and the request for dismissal filed in the Earlier Action.

The trial court granted the requests for judicial notice, sustained the demurrers without leave to amend on the ground the statute of limitations barred Larson's claims, and granted the motions to strike without leave to amend.  After the trial court entered two judgments dismissing his claims against Shuman and UHS, Larson timely appealed.

II

DISCUSSION

A.    *Standard of Review*

"A demurrer based on a statute of limitations will not lie where the action may be, but is not necessarily, barred.  [Citation.]  In order for the bar of the statute of limitations to be raised by demurrer, the defect must clearly and affirmatively appear on the face of the complaint; it is not enough that the complaint shows that the action may be barred.  [Citation.]" (*Marshall v. Gibson, Dunn & Crutcher* (1995) 37 Cal.App.4th 1397, 1403.)

"We review [Larson's] complaint de novo to determine whether it alleged facts sufficient to state a cause of action under any legal theory.  [Citation.]  In doing so, we look past the form of the pleading to its substance and ignore any erroneous or confusing labels [Larson] attached.  [Citation.]  ""We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.  [Citation.]'  . . .  Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.  [Citation.]"'  [Citation.]" (*Rosen*, *supra*, 193 Cal.App.4th at p. 458.)

5

"'"When a demurrer is sustained without leave to amend, the reviewing court must determine whether there is a reasonable probability that the complaint could have been amended to cure the defect. . . .' [Citation.] The abuse of discretion standard governs our review of that question. [Citation.] 'The plaintiff bears the burden of proving there is a reasonable possibility of amendment.' [Citation.] To satisfy that burden, the plaintiff '"must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading." [Citation.] The assertion of an abstract right to amend does not satisfy this burden. [Citation.] The plaintiff must clearly and specifically set forth the "applicable substantive law" [citation] and the legal basis for amendment, i.e., the elements of the cause of action and authority for it. Further, the plaintiff must set forth factual allegations that sufficiently state all required elements of that cause of action. [Citations.] . . . [¶] The burden of showing that a reasonable possibility exists that amendment can cure the defects remains with the plaintiff; neither the trial court nor this court will rewrite a complaint. [Citation.] Where the appellant offers no allegations to support the possibility of amendment and no legal authority showing the viability of new causes of action, there is no basis for finding the trial court abused its discretion when it sustained the demurrer without leave to amend. [Citations.]' [Citation.]" (*Rosen*, *supra*, 193 Cal.App.4th at p. 458.)

B. *The Trial Court Properly Considered Larson's Complaints From the Earlier Action*

Larson contends the trial court erred by considering the complaints he filed in the Earlier Action when it ruled on Shuman's and UHS's demurrers. According to Larson, the operative complaint in this action superseded the complaints he filed in the Earlier Action, and therefore the trial court could consider only the allegations in the operative complaint. We are not persuaded because Larson ignores well-established precedent authorizing courts to consider omitted and inconsistent allegations from earlier pleadings when ruling on a demurrer.

6

"'Generally, after an amended pleading has been filed, courts will disregard the original pleading. [Citation.] [¶] However, an exception to this rule is found . . . where an amended complaint attempts to avoid defects set forth in a prior complaint by ignoring them. The court may examine the prior complaint to ascertain whether the amended complaint is merely a sham.' [Citation.] . . . Moreover, any inconsistencies with prior pleadings must be explained; if the pleader fails to do so, the court may disregard the inconsistent allegations. [Citation.] Accordingly, a court is 'not bound to accept as true allegations contrary to factual allegations in former pleading in the same case.' [Citation.]" (*Vallejo Development Co. v. Beck Development Co.* (1994) 24 Cal.App.4th 929, 946 (*Vallejo Development*); *State of California ex rel. Metz v. CCC Information Services, Inc.* (2007) 149 Cal.App.4th 402, 412 (*CCC Information Services*) ["'[u]nder the sham pleading doctrine, plaintiffs are precluded from amending complaints to omit harmful allegations, without explanation, from previous complaints to avoid attacks raised in demurrers or motions for summary judgment'"].)

This exception applies not only to an amended pleading filed in the same action, but also to the first pleading filed in a separate action: "Both trial and appellate courts may properly take judicial notice of a party's earlier pleadings and positions as well as established facts from both the same case *and other cases*. [Citations.] The complaint should be read as containing the judicially noticeable facts, 'even when the pleading contains an express allegation to the contrary.' [Citation.] A plaintiff may not avoid a demurrer by pleading facts or positions in an amended complaint that contradict the facts pleaded in the original complaint or by suppressing facts which prove the pleaded facts false. [Citation.] Likewise, the plaintiff *may not plead facts that contradict the facts or positions that the plaintiff pleaded in earlier actions or suppress facts that prove the pleaded facts false*. [Citation.]" (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 877, original italics (*Cantu*).)

7

"'"'The principle is that of *truthful pleading*.'"' [Citation.] When the plaintiff pleads inconsistently *in separate actions*, the plaintiff's complaint is nothing more than a sham that seeks to avoid the effect of a demurrer. [Citations.] Under such circumstances, the court will disregard the falsely pleaded facts and affirm the demurrer." (*Cantu*, *supra*, 4 Cal.App.4th at pp. 877-878, original italics; see *CCC Information Services*, *supra*, 149 Cal.App.4th at p. 412 [affirming trial court ruling sustaining demurrer because plaintiff bound by inconsistent factual allegations in complaint from earlier action]; *Henry v. Clifford* (1995) 32 Cal.App.4th 315, 322-323 (*Henry*) [same].)

"The sham pleading doctrine is not '"intended to prevent honest complainants from correcting erroneous allegations . . . or to prevent correction of ambiguous facts."' [Citation.] Instead, it is intended to enable courts '"to prevent an abuse of process."' [Citation.]" (*Deveny v. Entropin, Inc.* (2006) 139 Cal.App.4th 408, 426; *Amid v. Hawthorne Community Medical Group, Inc.* (1989) 212 Cal.App.3d 1383, 1391 ['"A court has inherent power by summary means to prevent an abuse of its process and peremptorily to dispose of sham causes of action'"].) Plaintiffs therefore may avoid the effect of the sham pleading doctrine by alleging an explanation for the conflicts between the pleadings. (*CCC Information Services*, *supra*, 149 Cal.App.4th at p. 412; *Vallejo Development*, *supra*, 24 Cal.App.4th at p. 946.)

The operative complaint in this action simply alleges Shuman grabbed Larson's arm, pried open his mouth, and punched, lifted, and grabbed his chin, face, and mouth. The two causes of action against Shuman include no allegations regarding the context in which this attack allegedly occurred, and the two causes of action against UHS simply allege Shuman was acting as an agent for UHS "in that the harmful contact occurred during preparation for [Larson's] medical procedure." The causes of action against Shuman fail to incorporate the allegations that the harmful contact occurred during preparation for Larson's surgery.

8

The operative complaint therefore omits the previous allegations that Shuman was the anesthesiologist on Larson's kidney stone surgery, and that Larson alleged injuries occurred as Shuman administered anesthesia for the surgery. In the Earlier Action, Shuman and UHS successfully demurred to Larson's assault, battery, and intentional infliction of emotional distress claims on the ground Larson failed to allege sufficient facts to show he did not consent to Shuman's conduct because the alleged injuries occurred as Shuman provided medical care. The trial court sustained those demurrers with leave to amend, but rather than amend his pleading, Larson dismissed the Earlier Action and filed this action eight months later without the factual allegations showing his injuries occurred as Shuman administered anesthesia to Larson before Larson's surgery.

Larson is bound by the allegations of his complaints in the Earlier Action because he omitted facts the trial court relied on in sustaining Shuman's and UHS's earlier demurrers without providing an explanation for the omissions. The trial court therefore properly considered the allegations from Larson's earlier complaints when ruling on the demurrers in this action.[3] (*Cantu*, *supra*, 4 Cal.App.4th at pp. 877-888; see *CCC Information Services*, *supra*, 149 Cal.App.4th at p. 412; *Henry*, *supra*, 32 Cal.App.4th at pp. 322-323.)

C.     *Larson's Claims Are Time Barred Under Section 340.5*

The trial court sustained Shuman's and UHS's demurrers on the ground Larson's claims were barred by the one-year limitations period in section 340.5 for claims based on a health care provider's professional negligence. Larson contends the

---

[3]     The trial court judicially noticed the two complaints, the demurrers, the ruling on the demurrers, and the dismissal in the Earlier Action. Those documents were properly subject to judicial notice as court records under Evidence Code section 452, subdivision (d), and Larson does not contend the trial court erred in judicially noticing those documents. Evidence Code section 459, subdivision (a), requires us to judicially notice "each matter properly noticed by the trial court."

9

trial court erred because he did not allege a claim for professional negligence, but rather claims for battery and the intentional infliction of emotional distress. According to Larson, section 335.1's two-year limitations period generally applicable to personal injury claims governs. We are not persuaded because Larson fails to recognize section 340.5's proper scope and the true nature of his claims.

1.      Types of Claims Subject to Section 340.5's Limitations Period

Section 340.5 establishes a one-year limitations period for any "action for injury or death against a health care provider based upon such person's alleged professional negligence." (§ 340.5.) The one-year period runs from the date "the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury." (*Ibid*.) The statute also establishes a three-year outer limitations period that runs from the date of injury regardless when the plaintiff discovers the injury. Larson does not contend the three-year period applies, and the allegations of his complaints show he discovered his injuries immediately after he awoke from his kidney stone surgery.

Section 340.5 is part of the Medical Injury Compensation Reform Act (MICRA), which the Legislature enacted in 1975 as its response to a perceived "medical malpractice crisis." (*Perry v. Shaw* (2001) 88 Cal.App.4th 658, 667 (*Perry*).) MICRA made several substantial changes to the law governing medical malpractice actions with the intent to reduce insurance rates by reducing the size and number of malpractice judgments, and "thereby ensuring available and affordable health care." (*Ibid*.)

MICRA includes not only section 340.5, which shortened the limitations period for malpractice actions, but also several other statutes that abolished the collateral source rule (Civ. Code, § 3333.1), limited noneconomic damages to $250,000 (Civ. Code, § 3333.2), authorized periodic payments of future damages without the plaintiff's consent (§ 667.7), limited the contingency fees attorneys could charge (Bus. & Prof. Code, § 6146), authorized arbitration agreements in medical services contracts (§ 1295),

10

and required prior notice to health care providers before a malpractice action may be commenced (§ 364). (*Perry*, *supra*, 88 Cal.App.4th at p. 667; see *Smith v. Ben Bennett, Inc.* (2005) 133 Cal.App.4th 1507, 1514, 1524 (*Smith*).)

Like section 340.5, each MICRA statute limits its applicability to actions "based upon" the "professional negligence" of a "health care provider." (*Unruh-Haxton v. Regents of University of California* (2008) 162 Cal.App.4th 343, 354 (*Unruh-Haxton*); *Smith*, *supra*, 133 Cal.App.4th at p. 1514.) Each statute includes the same definition of the phrase "professional negligence": "[A] negligent act or omission to act by a health care provider in the rendering of professional services, which act or omission is the proximate cause of a personal injury or wrongful death . . . ."[4] (See, e.g., § 340.5; *Unruh-Haxton*, at p. 352; *Smith*, at p. 1514.)

Despite the apparent clarity of this definition, applying it may pose difficulties because additional claims often arise out of the same facts as a professional negligence claim, including claims for battery, products liability, premise liability, fraud, breach of contract, and intentional or negligent infliction of emotional distress. (*Smith*, *supra*, 133 Cal.App.4th at p. 1514; see *Unruh-Haxton*, *supra*, 162 Cal.App.4th at pp. 352-353.) Indeed, "[b]ecause acts supporting a negligence cause of action might also support a cause of action for an intentional tort, [the Supreme Court has] not limited application of MICRA provisions to causes of action that are based solely on a 'negligent act or omission' as provided in [MICRA's definition of professional negligence]." (*Central Pathology Services Medical Clinic, Inc. v. Superior Court* (1992) 3 Cal.4th 181, 192 (*Central Pathology*).) Instead, the Supreme Court "'has cautioned repeatedly that "the scope and meaning of the phrase[] . . . 'based on professional negligence' [may] vary depending upon the legislative history and 'the purpose underlying each of [MICRA's]

_____

[4] Each statute also includes the same definition of the term "health care provider" (see, e.g., § 340.5), but that definition is not relevant to this appeal because Larson does not dispute Shuman and UHS are health care providers.

11

individual statutes.' [Citation.]" [Citations.]' [Citation.]" (*Unruh-Haxton*, *supra*, 162 Cal.App.4th at p. 353; *Smith*, *supra*, 133 Cal.App.4th at p. 1515.)

Accordingly, when a plaintiff asserts a claim against a health care provider on a legal theory other than professional negligence, courts must determine whether the claim is nonetheless *based on the health care provider's professional negligence*, which would require application of MICRA. (*Smith*, *supra*, 133 Cal.App.4th at p. 1514; *Unruh-Haxton*, *supra*, 162 Cal.App.4th at p. 353.) To make that determination, courts must examine not only the legal theory alleged, but also the nature of the health care provider's alleged conduct and the legislative history of the MICRA provision at issue. (*Ibid*.; *Barris v. County of Los Angeles* (1999) 20 Cal.4th 101, 116 (*Barris*).) When, as here, the question presented concerns which limitations period applies, courts also must focus on the nature or gravamen of the claim, not the label or form of action the plaintiff selects. (*Hensler v. City of Glendale* (1994) 8 Cal.4th 1, 22-23; *Iverson, Yoakum, Papiano & Hatch v. Berwald* (1999) 76 Cal.App.4th 990, 995.)

Because a claim based on a health care provider's professional negligence varies from case to case, we rely on several other decisions for guidance. In *Unruh-Haxton*, this court considered whether section 340.5's limitations period barred the plaintiffs' fraud, conversion, and intentional infliction of emotional distress claims against a fertility clinic and its doctors for selling, conducting medical research on, and implanting the plaintiffs' fertilized eggs in other women without the plaintiffs' knowledge or consent. (*Unruh-Haxton*, *supra*, 162 Cal.App.4th at pp. 349, 350.) The trial court sustained the defendants' demurrer based on section 340.5's limitations period because it found the plaintiffs' intentional tort claims were merely alternative theories based on the same set of facts as a professional negligence claim. (*Id*. at p. 355.)

We reversed because our review of the complaint revealed the plaintiffs based their intentional tort claims on intentional misconduct, not professional negligence, and therefore applying section 340.5 would not further MICRA's goal of reducing the

12

number of medical malpractice actions filed: "The allegations of stealing and then selling a person's genetic material for financial gain [are] intentional act[s] of egregious abuse against a particularly vulnerable and trusting victim. None of the patients assert the egg harvesting medical procedures fell below the standard of care. Rather, it is the intentional and malicious quest to steal genetic material that is the focus of the lawsuit. [¶] . . . It would be inconsistent with the letter and spirit of the statutory scheme to hold allegations of intentional fraud, emotional distress, and stealing are really just other forms of professional negligence." (*Unruh-Haxton*, *supra*, 162 Cal.App.4th at pp. 355-356; see *Benun v. Superior Court* (2004) 123 Cal.App.4th 113, 124, 125-126 (*Benun*) [section 340.5 does not apply to statutory cause of action for custodial elder abuse (Welf. & Inst. Code, § 15657) because the claim is not based on professional negligence, but rather reckless or intentional neglect by elder's custodian].)

In *Perry*, the plaintiff alleged the physician defendant had committed a battery by performing a breast enhancement procedure as part of another surgical procedure despite the plaintiff's specific instructions not to do so. (*Perry*, *supra*, 88 Cal.App.4th at pp. 661-662.) The Court of Appeal concluded MICRA's $250,000 limitation on noneconomic damages did not apply to the battery claim because it was not based on professional negligence and nothing in MICRA's legislative history suggested the Legislature intended to extend the monetary limitation to intentional torts. (*Id.* at p. 668.)

In concluding the noneconomic damage limitation did not apply, the *Perry* court discussed at length the decision in *Cobbs v. Grant* (1972) 8 Cal.3d 229, where the Supreme Court distinguished between two qualitatively different types of battery. The first occurs when a physician obtains the patient's consent to perform one type of treatment, but performs a substantially different treatment for which no consent was obtained. In that circumstance, the intentional tort of battery has occurred because the physician deliberately deviated from the consent that was given. The second type of

13

battery is a technical battery, which occurs when a physician performs the treatment for which consent was obtained and an infrequent complication occurs that the physician failed to disclose when obtaining the patient's consent. In that circumstance, the claim is based on professional negligence, not intentional misconduct, because the physician did not deliberately deviate from the consent, but merely failed to disclose all known potential complications. (*Perry*, supra, 88 Cal.App.4th at pp. 663-664.) The *Perry* court emphasized it found MICRA's limitation on noneconomic damages did not apply because the plaintiff alleged a true battery based on a deliberate decision to ignore the scope of the plaintiff's consent, not a negligent battery based on the failure to disclose a potential complication. (*Id*. at pp. 664, 668, fn. 4.)

In *Preferred Risk Mutual Ins. Co. v. Reiswig* (1999) 21 Cal.4th 208 (*Preferred Risk*), the Supreme Court emphasized the importance of examining the underlying basis for the claim and determined MICRA's prefiling notice requirement and its related tolling provision (§ 364) applied to an equitable indemnity claim. (*Preferred Risk*, at pp. 211-212.) Although equitable indemnity claims are based on the common law duty to reimburse a person who pays money because of another's wrongdoing, the Supreme Court explained equitable indemnity actions are nonetheless based on a health care provider's professional negligence when the actions "flow from professional negligence actions (as opposed to unrelated tort actions)." (*Id*. at pp. 215, 218; see *Western Steamship Lines, Inc. v. San Pedro Peninsula Hospital* (1994) 8 Cal.4th 100, 114 [MICRA's limit on noneconomic damages applied to equitable indemnity action based on earlier professional negligence lawsuit because indemnity cannot occur without liability].)

Finally, in *Barris*, the Supreme Court concluded MICRA's limit on noneconomic damages applied to a federal law claim under the Emergency Medical Treatment and Active Labor Act (42 U.S.C. § 1395dd), which prohibits hospitals from transferring or discharging a patient suffering from a known emergency medical

14

condition until the patient's condition has been stabilized. (*Barris*, *supra*, 20 Cal.4th at pp. 108-109.) Although the federal law claim required a greater showing than a state law claim for professional negligence, including a showing the hospital had actual knowledge of the patient's emergency medical condition, the Supreme Court nonetheless concluded the federal law claim was based on professional negligence within the meaning of MICRA's noneconomic damages limitation because the law addressed a negligent omission to act by a health care provider in the rendering of professional services. (*Id.* at pp. 110-111.)

Despite the case-by-case approach of the foregoing cases, Shuman urges a bright-line rule that section 340.5 broadly applies to any claim *directly related* to the professional services rendered by a health care provider, as opposed to only claims *based upon* a health care provider's professional negligence. Shuman cites *Central Pathology* to support this contention, but *Central Pathology* did not construe section 340.5 or any other MICRA provision, and later cases have refused to apply *Central Pathology*'s standard to any MICRA provision.

*Central Pathology* construed section 425.13, which requires a plaintiff to establish a substantial probability of recovering punitive damages before alleging a punitive damages claim "[i]n any action for damages *arising out of* the professional negligence of a health care provider." (§ 425.13, italics added; *Central Pathology*, *supra*, 3 Cal.4th at p. 184.) Although section 425.13 regulates punitive damage claims against health care providers and its requirement the claim must arise out of "professional negligence" is similar to MICRA's "based on professional negligence" requirement, section 425.13 does not include MICRA's definition of professional negligence and it is not part of MICRA. (§ 425.13; *Central Pathology*, at pp. 187-188.) Section 425.13 was enacted more than a decade after MICRA as part of the Brown-Lockyer Civil Liability Reform Act (Stats. 1987, ch. 1498 §§ 1-7, pp. 5777-5782), which revised statutory provisions addressing punitive damages as part of a larger tort reform effort. (*Central*

15

*Pathology*, at p. 188.)  Based on section 425.13's language and legislative history, the *Central Pathology* court "h[e]ld that whenever an injured party seeks punitive damages for an injury that is directly related to the professional services provided by a health care provider acting in its capacity as such, then the action is one 'arising out of the professional negligence of a health care provider,' and the party must comply with section 425.13(a)." (*Central Pathology*, at pp. 191-192.)

Because section 425.13 is not part of MICRA and employs different language than MICRA's statutes, the Supreme Court repeatedly has rejected attempts to apply the standard it announced in *Central Pathology* to MICRA or other statutory provisions.  (*Delaney v. Baker* (1999) 20 Cal.4th 23, 39-40 (*Delaney*); *Barris*, *supra*, 20 Cal.4th at pp. 115-116 [refusing to use *Central Pathology* standard to determine whether claim was based on professional negligence and therefore subject to MICRA's limit on noneconomic damages].)  As the Supreme Court explained in *Delaney*, "The *Central Pathology* court made clear that it was not deciding the meaning of the term 'professional negligence' used in MICRA or in statutes other than section 425.13(a). . . . [¶] . . . [T]he *Central Pathology* court [also] did not purport to universally define the phrase 'arising out of professional negligence' much less the phrase 'based on professional negligence.' . . .  To claim that the *Central Pathology* definition extended beyond section 425.13(a) is to ignore the limitations that this court put on its own opinion." (*Delaney*, at pp. 39-40.)

We reject Shuman's efforts to apply the *Central Pathology* standard to section 340.5 for the same reasons and now consider whether the conduct Larson describes in his pleadings, the legal theories he alleges, and the purpose behind section 340.5 compel the conclusion his claims are based on professional negligence.

16

2.      Section 340.5's One-Year Limitations Period Applies Because Larson's Claims Are Based On Professional Negligence

Although Larson labels his claims as intentional torts for battery and intentional infliction of emotional distress, the operative complaint's factual allegations, when read in conjunction with Larson's complaints in the Earlier Action, reveal Larson's claims are based on professional negligence within the meaning of section 340.5. Indeed, Larson alleges Shuman was the anesthesiologist for his surgery and injured Larson by forcefully grabbing and twisting his arm while conducting a preoperative checkup, and prying open Larson's mouth and violently punching, lifting, and pushing Larson's face as he put on the mask to administer the anesthesia. These allegations challenge the manner in which Shuman rendered the professional health care services he was hired to perform; they do not allege intentional torts committed for an ulterior purpose.

Admittedly, punching a patient is not part of the professional services an anesthesiologist customarily provides, but none of the complaints in the Earlier Action alleged Shuman punched Larson in any manner. Instead, the complaints in the Earlier Action, and the allegations of the operative complaint, show Larson's claims are based on how Shuman performed his preoperative checkup and how he administered the anesthesia. Larson alleges Shuman performed some of the tasks "forcefully" and "violently," but those self-serving characterizations are merely attempts to avoid MICRA and the restrictions it imposes on all medical malpractice claims. Despite Larson's characterizations, the nature of the acts on which he bases his claims form part of the professional health care services Shuman rendered as an anesthesiologist. Larson simply claims Shuman performed his professional services in an unnecessarily harsh and forceful manner, which amounts to a claim Shuman failed to meet the applicable standard of care in rendering his services.

Unlike the claims in *Unruh-Haxton*, the focus of Larson's claims concern the manner in which Shuman rendered his professional services as an anesthesiologist,

17

not some collateral course of conduct pursued for Shuman's own gain or gratification. Larson does not allege Shuman acted with an intent to do anything other than administer the anesthesia for the surgery or that Shuman had any reason to intentionally injure Larson. Larson's allegations also are vastly different than the facts in *Perry*. Larson does not allege Shuman provided any medical treatment to which Larson did not consent or that Shuman deliberately deviated from the consent Larson provided for his surgery. Larson's claims are analogous to the claims the Supreme Court found to be based on professional negligence in *Preferred Risk* and *Barris* because they are necessarily based on Shuman's professional health care services.

Moreover, applying section 340.5's one-year limitations period to Larson's claims is consistent with MICRA's goal of reducing the number of medical malpractice actions by shortening the limitations period. (*Perry*, *supra*, 88 Cal.App.4th at p. 667; *Benun*, *supra*, 123 Cal.App.4th at pp. 125-126, fn. 6; *Noble v. Superior Court* (1987) 191 Cal.App.3d 1189, 1193.) By looking past Larson's labels and characterizations to the conduct itself, we advance MICRA's purpose because we prevent Larson from avoiding MICRA's shorter limitations period through artful pleading. (See *Smith*, *supra*, 133 Cal.App.4th at p. 1514.) We therefore conclude Larson's claims are based on professional negligence and barred by section 340.5's one-year limitations period.[5]

Larson relies on *So v. Shin* (2013) 212 Cal.App.4th 652 (*So*), to support his argument Shuman's conduct fell outside the purview of professional services. We are not persuaded. Larson mischaracterizes and ignores his own allegations and nonetheless forfeited any argument based on *So* by failing to raise the argument and cite *So* until the

---

[5] Larson does not dispute his allegations reveal he had his surgery in November 2010, discovered his injury immediately after he awoke from the surgery, complained to UHS and the police about Shuman's conduct that same month, and did not file this action under November 2012.

18

reply brief, thereby depriving Shuman and UHS of the opportunity to respond in writing.[6] (See, e.g., *Habitat & Watershed Caretakers v. City of Santa Cruz* (2013) 213 Cal.App.4th 1277, 1292, fn. 6 ["[a]rguments presented for the first time in an appellant's reply brief are considered waived"]; *Holmes v. Petrovich Development Co., LLC* (2011) 191 Cal.App.4th 1047, 1064, fn. 2 ["argument is forfeited" where "it is raised for the first time in [appellant's] reply brief without a showing of good cause"].)

In *So*, the plaintiff underwent a dilation and curettage procedure following a miscarriage. The plaintiff alleged the defendant administered insufficient anesthesia causing her to awake during the procedure and experience pain and discomfort. Upon the plaintiff summoning the defendant to the recovery room and complaining about awaking during the procedure, the defendant became angry and verbally abusive toward the plaintiff, shoved a container filled with the plaintiff's blood and tissue at the plaintiff, and told the plaintiff she could not have felt anything. As the plaintiff became more and more distraught, the defendant attempted to comfort the plaintiff, and begged the plaintiff not to report the incident or that she awoke during the procedure. Based on this confrontation, the plaintiff sued the defendant and others for negligence, intentional infliction of emotional distress, assault, and battery. (*So*, *supra*, 212 Cal.App.4th at pp. 657-658.) The trial court granted the defendant's motion for judgment on the pleadings on the negligence cause of action based on section 340.5's one-year limitations period. The defendants, however, did not challenge any of the intentional tort claims based on section 340.5's limitation period. (*So*, at pp. 660-661.)

The Court of Appeal reversed because the plaintiff's factual allegations showed the negligence claim could be based on general negligence rather than

_____

[6]     The *So* opinion was issued seven months before Larson filed his opening brief, and therefore he had ample opportunity to discover the opinion and include a discussion of it in his opening brief. Larson offers no explanation why he did not include *So* in his opening brief.

professional negligence, and therefore subject to section 335.1's two-year limitations period rather than section 340.5's one-year period. The *So* court explained, "professional negligence is only that negligent conduct engaged in *for the purpose of* (or the purported purpose of) delivering health care to a patient—or, in the words of our Supreme Court in *Central Pathology*, conduct 'directly related to the professional services provided by a health care provider *acting in its capacity as such*' and that 'is an ordinary and usual part of medical professional services.' [Citation.] Stated simply, negligent actions undertaken by a health care provider for the purpose of delivering medical care to a patient constitute professional negligence; tortious actions undertaken for a different purpose—in *Atienza* [*v. Taub* (1987) 194 Cal.App.3d 388], for the physician's sexual gratification—are not." (*So*, *supra*, 212 Cal.App.4th at pp. 666-667, original italics.) Because the plaintiff alleged the defendant engaged in conduct for her own benefit—for the purpose of persuading the plaintiff not to report that she awoke during the procedure—the *So* court concluded "the alleged negligence was not undertaken 'in the rendering of professional services,' and thus it does not constitute professional negligence within the meaning of section 340.5." (*So*, at p. 667.)

      *So* does not change the result in this case because Larson's allegations show Shuman necessarily undertook the alleged conduct in providing professional services—a preoperative checkup and administration of anesthesia. Unlike the allegations in *So*, Larson does not allege Shuman acted for any reason other than rendering professional services. Moreover, by relying on the standard *Central Pathology* announced in interpreting section 425.13, *So* is inconsistent with the Supreme Court decisions we discussed above that refused to apply *Central Pathology* to any MICRA provisions. (*Delaney*, *supra*, 20 Cal.4th at pp. 39-40; *Barris*, *supra*, 20 Cal.4th at pp. 115-116.)

      Finally, because we affirm the trial court's decision sustaining Shuman's and UHS's demurrers based on section 340.5's one-year limitations period, we do not

20

address whether Larson alleged sufficient facts to support his claims.  We also do not address whether the trial court properly granted Shuman's and UHS's motions to strike.

D.      *The Trial Court Did Not Abuse Its Discretion In Denying Larson Leave to Amend*

As explained above, a trial court's decision to deny a plaintiff leave to amend after sustaining a demurrer is reviewed for an abuse of discretion.  To establish an abuse of discretion, a plaintiff must show there is a reasonable possibility of amendment by specifically showing the additional facts that he or she intends to allege and how those facts would state a cause of action; "'[t]he assertion of an abstract right to amend does not satisfy this burden.'"  (*Rosen*, *supra*, 193 Cal.App.4th at p. 458.)  Here, Larson does not seek leave to amend, let alone explain how he could allege sufficient facts to overcome the bar of section 340.5's one-year limitations period.  Accordingly, Larson failed to show the trial court abused its discretion in denying him leave to amend.

III

DISPOSITION

The judgments are affirmed.  Shuman and UHS shall recover their costs on appeal.

ARONSON, ACTING P. J.

WE CONCUR:

FYBEL, J.

IKOLA, J.

21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| WAYNE EARL LARSON,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>UHS OF RANCHO SPRINGS, INC., et al.,<br><br>    Defendants and Respondents. | G050081<br><br>(Super. Ct. No. RIC1216315)<br><br>ORDER MODIFYING OPINION AND CERTIFYING OPINION FOR PUBLICATION; NO CHANGE IN JUDGMENT |

It is ordered that the opinion filed in the above-entitled matter on September 3, 2014, is hereby MODIFIED as follows:

1.  On page 3, the first sentence of the first paragraph, beginning with "In September 2011," delete the words "an earlier action" and replace them with the words "a lawsuit" so the sentence reads:

In September 2011, Larson filed a lawsuit (Earlier Action) to recover for injuries he allegedly sustained while he was a patient at UHS's hospital.

2.  On page 3, the first sentence of footnote number two, beginning with "Because this appeal follows," delete the words "the sustaining of" and insert the word "sustained" between the words "a" and "demurrer" so the sentence reads:

Because this appeal follows a sustained demurrer, we summarize the underlying facts as alleged in the complaint and include additional facts subject to judicial notice.

3. On page 10, the first sentence of the second full paragraph, beginning with "Section 340.5 is part of," delete the word "perceived" so the sentence reads:

Section 340.5 is part of the Medical Injury Compensation Reform Act (MICRA), which the Legislature enacted in 1975 as its response to a "medical malpractice crisis."

4. On page 17, the second sentence of the first paragraph, beginning with "Indeed, Larson alleges Shuman was an anesthesiologist," insert the word "by" between the words "and" and "prying" so the sentence reads:

Indeed, Larson alleges Shuman was the anesthesiologist for his surgery and injured Larson by forcefully grabbing and twisting his arm while conducting a preoperative checkup, and by prying open Larson's mouth and violently punching, lifting, and pushing Larson's face as he put on the mask to administer the anesthesia.

5. On page 18, footnote number five, beginning with "Larson does not dispute his allegations reveal," delete the word "under" and replace it with the word "until" so the footnote reads:

Larson does not dispute his allegations reveal he had his surgery in November 2010, discovered his injury immediately after he awoke from the surgery, complained to UHS and the police about Shuman's conduct that same month, and did not file this action until November 2012.

These modifications do not change the judgment.

Respondent and defendant Richard Shuman, M.D., and the Association of Southern California Defense Counsel request that our opinion be certified for publication.

23

It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). We therefore GRANT the requests.


                                        ARONSON, ACTING P. J.

WE CONCUR:


FYBEL, J.


IKOLA, J.

24