Filed 10/18/22  Eliason v. Ranken CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| TRAVIS ELIASON,<br><br>  Plaintiff and Appellant,<br><br>  v.<br><br>KATHRYN W. RANKEN,<br><br>  Defendant and Respondent. | C092879<br><br>(Super. Ct. No. 192905) |

Travis Eliason sued Christina Huey (his ex-wife) and Kathryn W. Ranken (his daughter's therapist), alleging they caused him to lose joint custody of his daughter after Ranken made false accusations against him in a document sent to a trial court mediator. He asserted causes of action against Ranken for intentional infliction of emotional distress, negligent infliction of emotional distress, general negligence, and intentional harm.

Because Eliason was aware of the alleged tortious conduct more than a year before he filed the lawsuit, the trial court sustained Ranken's demurrer without leave to amend

1

on various grounds, including that all of Eliason's claims against Ranken were time-barred under Code of Civil Procedure section 340.5 (section 340.5), which in relevant part requires a plaintiff to file an action based on professional negligence within one year after the plaintiff discovered the injury. The trial court said the intentional harm claim was not a recognized cause of action and was duplicative of the intentional infliction of emotional distress claim. It also found that Eliason's claims for negligent infliction of emotional distress and negligence failed because Eliason did not establish that Ranken owed him a duty of care. The trial court entered judgment dismissing all of Eliason's claims against Ranken.

Eliason now contends (1) because his claims are not for professional negligence, the two-year limitation period applies, (2) the trial court based its ruling on two inaccurate facts, and (3) Ranken owed a duty to Eliason and breached the duty.

We conclude (1) although the claims for negligent infliction of emotional distress and negligence are time-barred under section 340.5, the claim for intentional infliction of emotional distress is not based on professional negligence and is not barred under section 340.5;[1] (2) Eliason has not established that the trial court misunderstood the factual underpinnings of his claims; and (3) given our conclusion on the applicable statutes of limitations, we need not address the issue of duty.

We will reverse the judgment to the extent it sustained the demurrer to Eliason's cause of action for intentional infliction of emotional distress. We will otherwise affirm the judgment.

---

[1] Eliason also asserted a purported cause of action for intentional harm. The trial court struck that cause of action for reasons unrelated to section 340.5, and Eliason does not challenge that part of the trial court's decision on appeal.

BACKGROUND

Eliason sued Huey and Ranken in 2019. According to his first amended complaint, Eliason and Huey had joint custody of their daughter between 2013 and 2017. But in 2017 Eliason lost joint custody when Ranken, a therapist for his daughter hired by Huey, prepared a document that was ultimately shared with a trial court mediator. Eliason alleged that Ranken made statements against him in the document with malice and without a reasonable basis for believing the truth of the statements. He further asserted that based on the document, a state agency issued a citation against Ranken for unprofessional conduct. Eliason asserted causes of action against Ranken for intentional infliction of emotional distress, negligent infliction of emotional distress, general negligence, and intentional harm.

The trial court sustained Ranken's demurrer without leave to amend. It found all of Eliason's claims time-barred under section 340.5's one-year statute of limitations for claims based on professional negligence. It reasoned that Eliason knew of Ranken's conduct in late 2017, over a year before he filed his suit in 2019, as evidenced by a document he filed in Huey's earlier action for dissolution of marriage. In the document filed in late 2017, Eliason sought, among other things, to have Ranken removed as his daughter's therapist and asked the trial court to find Ranken's conduct illegal, unethical, and biased.

In addition, the trial court found that Eliason's claims for negligent infliction of emotional distress and general negligence also failed because Eliason did not establish that Ranken owed him a duty of care, and the intentional harm claim failed because such a cause of action is not legally recognized and appeared duplicative of the intentional infliction of emotional distress claim.

Although Ranken had asserted an argument based on the litigation privilege, the trial court concluded that the allegations in the complaint did not show that Ranken's preparation of the document was in anticipation of litigation. The trial court added that

3

although Ranken eventually became the daughter's court-appointed therapist, she was not appointed until after she prepared the document. The trial court entered judgment dismissing Eliason's claims against Ranken.

## STANDARD OF REVIEW

Because our review concerns an order sustaining a demurrer, " 'we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory.' [Citation.] ' " ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. . . ." [We also] give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.]' " ' " (*Mathews v. Becerra* (2019) 8 Cal.5th 756, 768.)

## DISCUSSION

### I

Eliason challenges the trial court's conclusion that all of his causes of action are time-barred under section 340.5. Although he does not dispute that he knew of Ranken's conduct over a year before filing suit, he contends his claims were not based on professional negligence within the meaning of section 340.5, and therefore a two-year limitations period applies.

### A

In 1975, in an effort to address a perceived medical malpractice insurance crisis following a rapid rise in insurance premiums (*Western Steamship Lines, Inc. v. San Pedro Peninsula Hospital* (1994) 8 Cal.4th 100, 111), the Legislature responded with the Medical Injury Compensation Reform Act of 1975 (Civ. Code, § 3333.2), or MICRA. In enacting MICRA, the Legislature intended "to reduce the cost of insurance by limiting the amount and timing of recovery in cases of professional negligence." (*Western Steamship Lines, Inc.,* at p. 111.)

Section 340.5 was one of the statutes the Legislature amended under MICRA. As amended in 1975, and still today, the statute states: "In an action for injury or death against a health care provider based upon such person's alleged professional negligence, the time for the commencement of action shall be three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first. . . ." It further defines professional negligence to mean "a negligent act or omission to act by a health care provider in the rendering of professional services, which act or omission is the proximate cause of a personal injury or wrongful death, provided that such services are within the scope of services for which the provider is licensed and which are not within any restriction imposed by the licensing agency or licensed hospital."

B

We understand the gravamen of Eliason's first amended complaint to be this: that Ranken, with the intent to harm Eliason, intentionally made false claims about him in a document she wrote in her capacity as a therapist; and after the document was sent to a trial court mediator, Eliason lost joint custody of his daughter and suffered severe emotional distress. Based on this alleged conduct, Eliason asserted a cause of action for intentional infliction of emotional distress. In the alternative, he alleged that even if Ranken's conduct was merely negligent, she committed the torts of negligent infliction of emotional distress and general negligence.

The claims for negligent infliction of emotional distress and negligence are time-barred. Although Eliason couches them in terms other than professional negligence, and although he removed the references to professional negligence that appeared in his initial complaint, the crux of the causes of action concerns alleged professional negligence.

According to Eliason's first amended complaint, Ranken prepared the document in her capacity as a Licensed Marriage and Family Therapist after Huey contacted her with the aim of ameliorating family dysfunction. Ranken's negligent misstatements in the

5

document caused Eliason to suffer harm. If that is so, then Eliason's claims are the very types covered under section 340.5: they allege "a negligent act . . . by a health care provider in the rendering of professional services" that was "the proximate cause of a personal injury. . . ." (§ 340.5.)

Eliason counters that section 340.5 is inapplicable because the statute covers only actions that "are within the scope of services for which the provider is licensed and which are not within any restriction imposed by the licensing agency or licensed hospital." (§ 340.5.) Eliason grounds his claim on an alleged finding from the Board of Behavioral Sciences that Ranken engaged in unprofessional conduct when she prepared her document. According to his amended complaint, the board issued a citation against Ranken for violation of Business and Professions Code section 4982, a statute allowing disciplinary actions against marriage and family therapists for unprofessional conduct. Eliason argues Ranken's conduct was outside the scope of the services for which she was licensed.

However, as the California Supreme Court explained in a similar context, the Legislature did not intend to exclude an action from MICRA simply because a healthcare provider engaged in unprofessional conduct. (*Waters v. Bourhis* (1985) 40 Cal.3d 424, 436.) Rather, the Legislature "intended to render MICRA inapplicable when a provider operates in a capacity for which he [or she] is not licensed—for example, when a psychologist performs heart surgery." (*Ibid.*) In this case, because Eliason never alleged facts showing that Ranken operated in a capacity for which she was not licensed, but instead merely notes the Board's finding that Ranken engaged in unprofessional conduct, his effort to avoid section 340.5 fails in connection with his causes of action for negligent infliction of emotional distress and negligence.

C

Although Eliason's two negligence-based claims are time-barred, it is different for his claim of intentional infliction of emotional distress. In general, an intentional tort

6

(like intentional infliction of emotional distress) is not a negligent tort (like professional negligence). (See *Barris v. County of Los Angeles* (1999) 20 Cal.4th 101, 115 ["We have not previously held that MICRA applies to intentional torts"].)

Of course, applying section 340.5 and other provisions in MICRA is not always so simple. "Despite the apparent clarity of th[e] definition [of professional negligence], applying it may pose difficulties because additional claims often arise out of the same facts that support a professional negligence claim, including claims for battery, products liability, premise liability, fraud, breach of contract, and intentional or negligent infliction of emotional distress." (*Larson v. UHS of Rancho Springs, Inc.* (2014) 230 Cal.App.4th 336, 347 (*Larson*).) In these types of cases, to determine whether a claim is truly based on a theory other than professional negligence, courts must consider not just "the label or form of action the plaintiff selects," but also "the nature or gravamen of the claim" and "the legislative history of the MICRA provision at issue." (*Ibid.*)

Here, Eliason's claim of intentional infliction of emotional distress falls outside section 340.5's scope. The gravamen of his complaint is that Ranken, with the intent to harm Eliason, intentionally made false statements about him that resulted in him losing joint custody of his daughter and suffering severe emotional distress. Those alleged acts cannot be characterized as professional negligence. Nothing in the meaning of the term negligence favors such a conclusion, nor do we find anything in the legislative history suggesting that intentional wrongdoing should nevertheless be equated with negligent wrongdoing. (See *Coit Drapery Cleaners, Inc. v. Sequoia Ins. Co.* (1993) 14 Cal.App.4th 1595, 1609 [intentional conduct cannot be "recast . . . as merely negligent"]; see also *Unruh-Haxton v. Regents of University of California* (2008) 162 Cal.App.4th 343, 355-356 [patients' claims for fraud, conversion, and intentional infliction of emotional distress were related to wrongful intentional conduct, not mere negligence]; *Perry v. Shaw* (2001) 88 Cal.App.4th 658, 669 [nothing in the legislative history of MICRA

7

suggests the Legislature intended to exempt intentional wrongdoers from liability by treating such conduct as though it had been nothing more than mere negligence].)

Ranken contends we should find differently based on *Larson*, but her reliance on that case is misplaced. The plaintiff there sued a doctor who allegedly, among other things, " 'forcefully grabb[ed]' and 'unnecessarily twisted' his arm" in the course of administering anesthesia for a surgery. (*Larson, supra*, 230 Cal.App.4th at pp. 340-341.) At some point, the plaintiff voluntarily dismissed his case. (*Id.* at p. 341.) But several months later, the plaintiff sued the doctor again, this time omitting certain allegations—including that the doctor harmed him in the course of administering anesthesia—and adding others, including that the doctor violently punched him. (*Id.* at pp. 341, 345, 351.)

After the trial court sustained the doctor's demurrer based on section 340.5, the Court of Appeal affirmed. (*Larson, supra*, 230 Cal.App.4th at pp. 342, 351.) Although the plaintiff labeled his claims as intentional torts for battery and intentional infliction of emotional distress, the operative complaint's factual allegations, when read in conjunction with complaints in an earlier action, revealed the claims were based on professional negligence within the meaning of section 340.5. (*Larson,* at p. 351.) The court acknowledged that "punching a patient is not part of the professional services an anesthesiologist customarily provides." (*Ibid.*) But after discussing the sham-pleading doctrine, the court found it telling that the allegation only appeared in the plaintiff's most recent complaint. (*Id.* at pp. 343-344, 351-352.) In the end, the court concluded the plaintiff's "allegations challenge the manner in which [the defendant] rendered the professional health care services he was hired to perform; they do not allege intentional torts committed for an ulterior purpose." (*Id.* at p. 351.)

*Larson* is inapposite. Unlike the plaintiff in *Larson*, Eliason has consistently alleged that Ranken committed an intentional tort.

## II

Eliason also claims the trial court based its ruling on two inaccurate facts.

8

He points to the trial court's statement that he alleged Ranken "wrongfully treated his daughter without his consent." Eliason contends he never made this allegation in his amended complaint and, in stating otherwise, the trial court suggested the "claim against Ranken is for wrongfully treating [his child]." Eliason, however, overstates the matter. Although the trial court may have believed that Eliason's claims were based in part on the allegation that Ranken wrongfully treated his child, it also understood his claims to be based on the allegation that Ranken "wrongfully wrote a [document] to Court appointed mediators containing malicious statements which resulted in [Eliason] losing child custody." Eliason's suggestion that the trial court entirely misunderstood the basis for his claims falls short. In any event, our focus is on whether the trial court reached the correct result, not on whether it correctly characterized all the facts. (See *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 18-19.)

Eliason turns next to the trial court's statement that he alleged Ranken "wrongfully wrote a [document] to Court appointed mediators." Eliason argues he "never . . . contend[ed] that Ranken wrote a [document] to the court-appointed mediators"; he instead alleged, "Ranken wrote a [document] to Huey which Ranken alleged she did not intend to be provided to the court, but later Huey did provide it to a [trial court] mediator." We read his amended complaint differently. According to his allegations, "Ranken provided the Ranken report to Huey, and did provide it to a mediator of the [trial court]." Perhaps Eliason meant to allege that Huey, not Ranken, "did provide it to a mediator of the [trial court]." But that is not what he alleged. At any rate, although Eliason characterizes his preferred reading as "a critically different contention," we fail to grasp the materiality of the issue to this appeal.

III

Eliason further asserts that Ranken owed him a duty of care, even if he had no professional relationship with her, and that she breached that duty. Eliason appears to raise this claim in response to the trial court's finding that his two negligence claims,

9

apart from being time-barred under section 340.5, also failed because Eliason never established that Ranken owed him a duty of care. But because we agree with the trial court's conclusion that Eliason's negligence claims are time-barred, we need not consider the court's alternative ground for finding that the claims failed.

DISPOSITION

The judgment is reversed to the extent it sustained the demurrer to Eliason's cause of action for intentional infliction of emotional distress. The judgment is otherwise affirmed. Eliason is entitled to recover his costs on appeal. (Cal. Rules of Court, rule 8.278(a).)

/S/  
MAURO, Acting P. J.

We concur:

/S/  
HOCH, J.

/S/  
KRAUSE, J.