Filed 1/12/15  Pryor v. Deutsche Bank Securities CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| WILL M. PRYOR, JR., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> DEUTSCHE BANK SECURITIES, INC., et al., <br><br> Defendants and Respondents. | B250250 <br><br> (Los Angeles County Super. Ct. No. PC051476) |

APPEAL from a judgment of the Superior Court of Los Angeles, Randy Rhodes, Judge.  Affirmed.

Jenner & Block, Kenneth K. Lee, L. David Russell, Christina Avedissian, Nary Kim, MacKenzie L. Smith, Alexander M. Smith, for Plaintiff and Appellant.

Bryan Cave, John W. Amberg, James J. McGrath, for Defendants and Respondents.

————————————

Plaintiff Will M. Pryor, Jr., appeals from a judgment of dismissal following the trial court's order sustaining a demurrer to his fourth amended complaint. Pryor filed his operative complaint against defendants Deutsche Bank Securities, Inc. (erroneously sued as "Deutsche Bank Securities, Inc. aka Deutsche Bank National Trust"), Deutsche Bank National Trust Company, as Trustee for GSAA Home Equity Trust 2005-MTR-1 (Deutsche Bank), for wrongful eviction and conversion.

On appeal, Pryor does not challenge his wrongful eviction claim, he "only challenges the Court's written order sustaining the demurrer as to his conversation claim." Pryor contends his complaint stated a cause of action for conversion and Deutsche Bank failed to establish a viable defense to his conversion claim. We hold that Pryor cannot overcome the sham pleading doctrine based on his inconsistent allegations throughout his pleadings in this and in other actions. Specifically, Pryor has failed to offer any explanation regarding the inconsistency between the damages alleged throughout his pleadings for his conversion claim, and his sworn statement pertaining to his personal property in a prior bankruptcy proceeding. We therefore affirm the judgment.

## STATEMENT OF FACTS[1]

Because we are reviewing a judgment entered after the sustaining of a demurrer without leave to amend, the following factual statement is drawn principally from Pryor's fourth amended complaint. We assume the truth of all factual allegations properly pleaded in Pryor's operative complaint, as well as matters that may be judicially noticed. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081; Code Civ. Proc., § 430.30, subd. (a).)

---

[1] Deutsche Bank's motion for judicial notice of a reply brief filed by Pryor in a separate action is denied.

In February 2005, Donna Ryan purchased the residential property located at 14739 Valleyheart Drive, Sherman Oaks, California (the Valleyheart property). The deed of trust and promissory note securing a loan for the Valleyheart property listed Ryan as the borrower. Ryan and Pryor entered into a partnership agreement under which Pryor would improve and develop the Valleyheart property for sale and also serve as a tenant. Under the agreement, Pryor would receive half of the profits from the sale of the Valleyheart property after Ryan recovered her investment and Pryor was compensated for his improvements to the property. At the time of this agreement, Ryan was residing in Napa, California, and eventually moved to Ft. Collins, Colorado. Ryan passed away in March 2007, leaving her husband, Kenneth Ryan, in charge of her estate.

When Pryor moved into the Valleyheart property, he brought along his personal possessions acquired over 32 years of his adult life. The Valleyheart property was his only place of residence between December 2006 and March 2010. Pryor did not physically occupy the Valleyheart property during times of construction or real estate open houses, but he alleged most of his personal property remained at the house. Pryor alleged his personal possessions at the Valleyheart property in March 2010 had a reasonable market value of $211,375.

In December 2008, a Notice of Default and Election to Sell Under the Deed of Trust was recorded on the Valleyheart property due to Ryan's failure to make timely mortgage payments. In March 2009, a Notice of Trustee's Sale was recorded, explaining that the Valleyheart property was put up for sale at a public auction. The notice listed the date, place, and time of sale. The Valleyheart property was subsequently sold to Deutsche Bank in February 2010.

On March 2, 2010, Pryor returned to the Valleyheart property and discovered he had been locked out. Pryor made numerous attempts to recover his personal property by contacting Deutsche Bank and its agents, but was denied recovery of the property. Pryor's personal property that remained at the Valleyheart property primarily consisted of appliances.

3

Also on March 2, 2010, a letter had been sent to The Estate of Donna Ryan at the Valleyheart property from Cyprexx Services LLC, explaining that the property had been secured by Cyprexx Services. The owner was directed to contact Cyprexx Services at the number listed in order to retrieve any personal belongings from the premises. The personal belongings were to be disposed of if not claimed by March 19, 2010.

In June 2010, Deutsche Bank sold the Valleyheart property, along with Pryor's personal property, to Tanya Barcessat.[2] On June 18, 2010, Pryor received a letter from Glen Oaks Escrow, on behalf of Deutsche Bank, for demand and release of a mechanics' lien he recorded on the Valleyheart property for $169,327.

## PROCEDURAL HISTORY

### *Pryor's History of Inconsistent Pleadings*

#### The Complaint

On September 2, 2011, Pryor initiated this action in propria persona against Deutsche Bank alleging breach of contract, breach of the covenant of good faith and fair dealing, conversion, and predatory lending with respect to the loan agreement for the Valleyheart property, subsequent foreclosure, and alleged conversion of personal possessions at the property.[3] Pryor asserted that he entered into a loan agreement with Deutsche Bank and made timely mortgage payments under the agreement. When

---

[2] Barcessat was a named defendant on each of Pryor's complaints, however, no allegations are made against her. Before filing his second amended complaint, Pryor filed a request for dismissal with prejudice as to Barcessat on August 3, 2012, and the dismissal was entered by the court clerk on that day.

[3] Pryor represented himself throughout proceedings in the trial court. He is represented by counsel for this appeal.

Deutsche Bank increased his mortgage payments, Pryor defaulted in August 2008. Pryor also alleged and attached a mechanics' lien on the Valleyheart property that was held by his company located at 7529 Craner Ave., Sun Valley, California (the Sun Valley address). The mechanics' lien was record on July 28, 2009. Pryor filed this lawsuit listing his address as the Sun Valley address. In response, Deutsche Bank filed a request for judicial notice of loan documents and other recorded documents pertaining to the Valleyheart property, none of which named Pryor as the borrower or owner of the property.

On October 28, 2011, Deutsche Bank filed a demurrer to the complaint.

**The First Amended Complaint**

On March 6, 2012, Pryor filed his first amended complaint against Deutsche Bank for breach of written contract, breach of the covenant of good faith and fair dealing, and general negligence. Pryor dropped the conversion cause of action. Pryor maintained he purchased the Valleyheart property, but Ryan was the borrower on the recorded loan agreement. Pryor claimed he was a co-owner of the Valleyheart property and that Ryan granted him 50 percent ownership interest in the property. He also alleged he made $169,000 in improvements, which is described in the above referenced mechanics' lien.

The trial court sustained Deutsche Bank's demurrer to the first amended complaint with leave to amend.

**The Second Amended Complaint**

On August 6, 2012, Pryor filed his second amended complaint, and then on August 9, 2012, a corrected second amended complaint. Pryor alleged causes of action for "tortuous eviction" and conversion against Deutsche Bank. Although Pryor alleged he was evicted, he continued to maintain that he was an owner. He further alleged the

5

Valleyheart property was his "only place of residence between December 2006 and 2010." In his opposition to Deutsche Bank's demurrer, Pryor contended for the first time in any pleading that he was a tenant of the Valleyheart property. However, he maintained that he purchased the Valleyheart property and was a 50 percent owner.

The trial court sustained Deutsche Bank's demurrer with leave to amend.

**The Third Amended Complaint**

On September 28, 2012, Pryor filed his third amended complaint against Deutsche Bank for unlawful eviction and conversion. Pryor still claimed 50 percent "stake" in the Valleyheart property, but was a "peaceable and lawful tenant of the Valleyheart Property." He again alleged that the Valleyheart property was his "only place of residence between December 2006 and March 2010." In response, Deutsche Bank filed a request for judicial notice of Pryor's third amended complaint in a different action (*Pryor v. California Fair Plan Assn.* (Super. Ct. L.A., 2010, No. LC08053) (hereafter No. LC08053)). Pryor had alleged in No. LC08053 that from November 22, 2006, through December 2008, the Valleyheart property "remained unoccupied because of the repair work and [Pryor's] attempt to sell it through Realtors." Deutsche Bank also attached Pryor's opening brief on appeal in No. LC08053, which stated that in "June 2007, he was relocated due to terrorist threats and was at that time not occupying the property." (*Pryor v. California Fair Plan Assn.* (Sept. 29, 2011, B225066) [nonpub. opn.].) In his opposition to the demurrer, Pryor attached his amended complaint in No. LC08053 filed September 29, 2009. The amended complaint stated that he purchased the Valleyheart property. Pryor also included the claim of his mechanics' lien that was recorded on March 31, 2010. This mechanics' lien was almost an exact copy of the previous claim but was less detailed in the services/materials provided, and Pryor was named as the claimant, rather than his company. The lien stated the same amount of money that was

due and owned to Pryor.  Also instead of listing the Sun Valley address for Pryor's company, a P.O. Box in Sherman Oaks was listed.

The trial court again sustained Deutsche Bank's demurrer with leave to amend.

**Lease Agreements**

After the ruling on the demurrer to the second amended complaint, Pryor served documents in response to Deutsche Bank's request for production, which included several leases.  Deutsche Bank requested judicial notice of these documents, which the trial court granted.

The first lease agreement was between Albert Hanson and Pryor, for $1,200 a month, for a property located at the Sun Valley address.  There was an apparent attempt to disguise the address by scribbling over it.  The beginning of the lease period was left blank, but Hanson's signature shows that he signed the lease on August 5, 2007.

The second lease agreement was an exact copy of the first, with two significant changes.  First, the address of the Valleyheart property has been written in after the scribbled-over Sun Valley address.  Second, the start date of December 2006 had been inserted.

The third lease agreement was attached to Pryor's third amended complaint.  The agreement was made between The Donna Marie Ryan Trust and Pryor for rental of the Valleyheart property from January 1, 2007, through January 1, 2008, for $2,000 a month.  Ryan signed the agreement in December 2006,[4] and Pryor signed it on January 4, 2007.

Pryor attached another lease agreement to his opposition to the demurrer to his third amended complaint and then the same lease was attached to his fourth amended complaint.  The agreement was initialed by Pryor on July 12, 2008, and Donna Ryan

---

[4] The day in December 2006 in which Ryan signed the lease agreement is illegible.

7

Estate on July 18, 2008. The agreement stated that Ryan would rent the Valleyheart property to Pryor from August 1, 2008, through July 31, 2009 for $1,200 a month.[5]

Another exhibit attached by Pryor to his fourth amended complaint indicates that his address was 8545 Balboa Boulevard, #109, Northridge, CA on December 14, 2009.

**Bankruptcy Proceedings**[6]

On April 13, 2009, Pryor filed a Summary of Schedules with the United States Bankruptcy Court in the Central District of California. Under penalty of perjury, Pryor declared that he owned $2,440 in personal property, claiming $300 in furniture and appliances, and $300 in clothing. The other personal property listed was a personal checking and savings account for $15 and $5, respectively. Also, Pryor listed a 1999 Ford Explorer for $1,820. Pryor declared he owned the Valleyheart property and was paying $7,700 a month in rent or mortgage for the property.

*Fourth Amended Complaint*

On January 22, 2013, Pryor filed his operative fourth amended complaint against Deutsche Bank alleging unlawful eviction and conversion, concurrently with a request for judicial notice and a memorandum of points and authorities. As to the conversion claim,

---

[5] The fourth lease agreement was filed by Pryor in his opposition to the demurrer to his third amended complaint and then with his request for judicial notice, concurrently filed with his fourth amended complaint. This lease agreement was only one page and did not include initials from Pryor or Donna Ryan Estate, along with the date signed. It was not until Pryor's second request for judicial notice to his fourth amended complaint that he included that second page with the parties' initials and date executed.

[6] The trial court took judicial notice of Pryor's Summary of Schedules filed by Deutsche Bank concerning his bankruptcy proceedings.

Pryor alleges that he "was, and still is, rightful owner" of the personal property located at the Valleyheart property, and therefore entitled to possession of that property. Pryor alleged his personal property had a value of $211,375. He further alleged that Deutsche Bank wrongfully and without just or reasonable cause took possession of the Valleyheart property by locking him out on March 2, 2010. Moreover, Deutsche Bank had no right to the possession of the Valleyheart property because it failed to "lawfully terminate [Pryor's] possession of the premises." Deutsche Bank then allegedly converted Pryor's personal property to its own use. Deutsche Bank also failed to take reasonable steps to notify Pryor that it intended to remove and discard his personal property. Deutsche Bank sold a portion of Pryor's personal property. Deutsche Bank then denied Pryor's repeated attempts to recover his personal property. These alleged actions demonstrate Deutsche Bank's intent in converting Pryor's property, and as a proximate result of Deutsche Bank's conversion, Pryor sustained damages.

On February 25, 2013, Deutsche Bank filed a demurrer, along with a request for judicial notice and opposition to Pryor's request for judicial notice. Deutsche Bank contended Pryor failed to plead the lawful possession element of conversion because he cannot allege that he was in possession of the Valleyheart property at the time of foreclosure, and therefore cannot allege that he had any lawful possession of personal affects of the property. Deutsche Bank pointed out that Pryor alleged in his three previous pleadings that he was the owner of the Valleyheart property until he merely alleged he was a lessee of the Valleyheart property in his opposition to the demurrer to the second amended complaint. In Pryor's third and fourth amended complaint, Pryor now alleges he was not the title owner of the Valleyheart property but contends that he was a tenant from December 2006 until March 2, 2010. Pryor's allegation that he was a tenant at the Valleyheart property is contradicted by allegations he made prior pleadings, by discovery responses and exhibits in this lawsuit, and in prior lawsuits. Moreover, Pryor provides no explanation for these contradictions. Pryor cannot explain his inconsistent allegation that he was a tenant because it is contradicted by allegations he

9

made in this lawsuit and in prior lawsuits, which demonstrates a pattern of sham pleading.

Pryor also failed to plead any wrongful act or disposition by Deutsche Bank. Pryor only makes conclusory allegations without any factual support. He failed to establish how Deutsche Bank's alleged taking of the personal property following a proper foreclosure under California's nonjudicial foreclosure statutes was wrongful. In Pryor's first amended complaint and in his opposition to Deutsche Bank's demurrer to that complaint, Pryor attached a letter from Cyprexx Services which informed the recipient that personal property had been removed on behalf of the owner and could be retrieved from contacting Cyprexx's office. Because the Cyprexx letter established that Deutsche Bank merely "carried away and stored [Pryor's] personal property in [his] name," there cannot be any conversion as a matter of law. Deutsche Bank contended that the trial court recognized in its ruling on the prior demurrer that such a letter is allowed under Civil Code sections 1988 and 1989, and stated that Pryor must explain how such a letter did not comply with the sections in order to avoid a sham pleading. Pryor's attachment of the Cyprexx letter demonstrated Deutsche Bank's compliance with the safe harbor provisions of the statute. Thus, there are no facts pleaded to establish any intent by Deutsche Bank to convert Pryor's personal property.

On April 10, 2013, Pryor filed a second request for judicial notice along with his opposition to the demurrer. On May 3, 2013, Deutsche Bank filed its reply in support of the demurrer. Deutsche Bank contended that Pryor is barred by the sham pleading doctrine. "Just as the Court ruled when it previously sustained [Deutsche Bank's] demurrers to the Second Amended Complaint ("SAC") and Third Amended Complaint ("TAC"), [Pryor's] Fourth Amended Complaint ("4AC") is subject to the Sham Pleading Doctrine. In fact, with each new pleading, [Pryor's] sham pleading problem just gets worse - his foundational allegation that he was a tenant in the [Valleyheart] Property is now contradicted by several prior lawsuits, four conflicting leases, his prior pleadings in this case, recorded documents, and multiple exhibits to his own complaints, all of which

10

are judicially noticeable." Furthermore, Deutsche Bank contended that Pryor does not plead conversion because he fails to allege facts to establish (1) a wrongful act or disposition by Deutsche Bank, or (2) that Deutsche Bank did not fall under the safe harbor provision of Civil Code section 1988. Because Pryor has never addressed these defects, he waives any objection to them, and the court should sustain the demurrer.

On May 10, 2013, the trial court granted Deutsche Bank's request for judicial notice in its entirety but denied Pryor's multiple requests for judicial notice. The court sustained the demurrer without leave to amend. In support of its ruling, "The Court finds that [Pryor] engaged in sham pleading. The Court takes note of the fact that when [Pryor] realized his claims based on his alleged ownership of the [Valleyheart] Property were invalid, he changed his position to claim that he was a tenant leasing the property from the true owner. The Court holds that [Pryor] failed to provide an adequate explanation for his change in position or why his tenancy status was not raised until the Third Amended Complaint. The Court also holds that [Pryor] engaged in sham pleading and failed to provide an adequate explanation for inconsistent and contradictory leases that he attached to his pleadings, and for inconsistent and contradictory allegations in his other lawsuits." With respect to the conversion claim, the court held that Pryor "violated the Sham Pleading Doctrine because he did not provide a sufficient explanation for a letter from Cyprexx Services that was attached to [his] First Amended Complaint and to his objection to [Deutsche Bank's] Demurrer to First Amended Complaint." The court found "that the Cyprexx letter complied with Civil Code sections 1174 & 1988-89 by stating that personal property removed from the Property was being held on behalf of the owner and describing how such personal property could be retrieved." The court then entered judgment of dismissal in favor of Deutsche Bank. Pryor filed a timely notice of appeal.

11

**DISCUSSION**

*Standard of Review*

"A demurrer tests the legal sufficiency of the factual allegations in a complaint. We independently review the sustaining of a demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action or discloses a complete defense. [Citation.] We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded and matters of which judicial notice has been taken. [Citation.] We construe the pleading in a reasonable manner and read the allegations in context. [Citation.] We must affirm the judgment if the sustaining of a general demurrer was proper on any of the grounds stated in the demurrer, regardless of the trial court's stated reasons. [Citation.]" (*Siliga v. Mortgage Electronic Registration Systems, Inc.* (2013) 219 Cal.App.4th 75, 81.)

"It is an abuse of discretion to sustain a demurrer without leave to amend if there is a reasonable probability that the defect can be cured by amendment. [Citation.] The burden is on the plaintiff to demonstrate how the complaint can be amended to state a valid cause of action. [Citation.] The plaintiff can make that showing for the first time on appeal. [Citation.]" (*Siliga v. Mortgage Electronic Registration Systems, Inc., supra,* 219 Cal.App.4th at p. 81.)

*The Sham Pleading Doctrine*

Deutsche Bank contends the trial court correctly sustained the demurrer to the fourth amended complaint because the entire complaint was a sham pleading. We agree.

""'Generally, after an amended pleading has been filed, courts will disregard the original pleading. [Citation.] [¶] However, an exception to this rule is found . . . where an amended complaint attempts to avoid defects set forth in a prior complaint by ignoring

12

them.  The court may examine the prior complaint to ascertain whether the amended complaint is merely a sham."  [Citation.] . . . Moreover, any inconsistencies with prior pleadings must be explained; if the pleader fails to do so, the court may disregard the inconsistent allegations.  [Citation.]  Accordingly, a court is "not bound to accept as true allegations contrary to factual allegations in former pleading in the same case." [Citation.]'  (*Vallejo Development Co. v. Beck Development Co.* (1994) 24 Cal.App.4th 929, 946 []; *State of California ex rel. Metz v. CCC Information Services, Inc.* (2007) 149 Cal.App.4th 402, 412 (*CCC Information Services*) ["'[u]nder the sham pleading doctrine, plaintiffs are precluded from amending complaints to omit harmful allegations, without explanation, from previous complaints to avoid attacks raised in demurrers or motions for summary judgment"'].)"  (*Larson v. UHS of Rancho Springs, Inc.* (2014) 230 Cal.App.4th 336, 343-344.)

"This exception applies not only to an amended pleading filed in the same action, but also to the first pleading filed in a separate action:  'Both trial and appellate courts may properly take judicial notice of a party's earlier pleadings and positions as well as established facts from both the same case *and other cases.*  [Citations.]  The complaint should be read as containing the judicially noticeable facts, "even when the pleading contains an express allegation to the contrary."  [Citation.]  A plaintiff may not avoid a demurrer by pleading facts or positions in an amended complaint that contradict the facts pleaded in the original complaint or by suppressing facts which prove the pleaded facts false.  [Citation.]  Likewise, the plaintiff *may not plead facts that contradict the facts or positions that the plaintiff pleaded in earlier actions or suppress facts that prove the pleaded facts false.*  [Citation.]'  (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 877, original italics (*Cantu*).)"  (*Larson v. UHS of Rancho Springs, Inc., supra,* 230 Cal.App.4th at p. 344.)

"'"'The principle is that of *truthful pleading.*'"  [Citation.]  When the plaintiff pleads inconsistently *in separate actions,* the plaintiff's complaint is nothing more than a sham that seeks to avoid the effect of a demurrer.  [Citations.]  Under such circumstances,

13

the court will disregard the falsely pleaded facts and affirm the demurrer.' (*Cantu, supra,* 4 Cal.App.4th at pp. 877-878, original italics; see *CCC Information Services, supra,* 149 Cal.App.4th at p. 412 [affirming trial court ruling sustaining demurrer because plaintiff bound by inconsistent factual allegations in complaint from earlier action]; *Henry v. Clifford* (1995) 32 Cal.App.4th 315, 322-323 [same].)" (*Larson v. UHS of Rancho Springs, Inc., supra,* 230 Cal.App.4th at p. 344.)

The trial court was entitled to guard against sham pleadings in order to prevent abuse in the litigation process. Pryor claimed he was not only the owner of the Valleyheart property but also the borrower on the loan agreement. The documents judicially noticed by the trial court contradict Pryor's claim, as he is not on any of the loan documents or other recorded documents related to the Valleyheart property. Pryor has not adequately explained the reasons behind his shift from complete ownership to tenancy. Moreover, he stated in his previous pleadings that he remained at the Valleyheart property from December 2006 to March 2010. However, in his most recent complaint, he stated he did not occupy the property during construction and open houses. Then in a different lawsuit, No. LC08053, Pryor stated the Valleyheart property was unoccupied from November 22, 2006, through December 2008. In the same litigation, Pryor stated in his opening brief on appeal that "in June 2007, he was relocated due to terrorist threats and was at that time not occupying the property." (*Pryor v. California Fair Plan Assn.* (Sept. 29, 2011, B225066) [nonpub. opn.].) Pryor also listed an address in Northridge as his residence several months prior to the alleged lockout from the Valleyheart property by Deutsche Bank. This is a direct contradiction of his previous pleadings where he alleged the Valleyheart property was his only place of residence from December 2006 to March 2010.

Additionally, Pryor provided the court with a total of four different lease agreements that allegedly substantiated his claim that he was a tenant at Valleyheart property. But the first two lease agreements were between Pryor and Henson, an individual who was *not the owner or alleged to have had any ownership interest* in the

14

Valleyheart property. Also, both add support to a finding of sham pleading, because the first lease address was at the Sun Valley address, which appeared to be scratched out, and the second lease agreement listed the Valleyheart property address after the scratched out portion. All the leases submitted by Pryor varied in the time period of tenancy, the amount of monthly rental payment, and completely contradicted his statements made under oath at his bankruptcy proceedings in April 2009. Pryor declared he paid $7,700 in monthly rent or mortgage payments. This amount is an inexplicable variance from the lease agreements, which at most stated $2,000 a month in rent.

The trial court reasonably concluded by the time of the fourth amended complaint that Pryor had engaged in a pervasive attempt to manipulate the pleadings with inexplicably inconsistent allegations. Absent an explanation in his pleading for the barrage of inconsistent allegations, the trial court was free under the sham pleading doctrine not to accept the truth of the allegations.

### *Conversion Cause of Action*

Pryor argues on appeal that the fourth amended complaint stated all the elements of a conversion cause of action, and on that basis, the demurrer should have been overruled. Pryor's argument views the record in a far too narrow fashion, giving no consideration to the allegations of the fourth amended complaint that are inconsistent with Pryor's myriad of pleadings in this and other actions. Contrary to his contention on appeal, Pryor cannot overcome the sham pleading doctrine by simply pointing to the allegations in his conversion cause of action, without explanation for the multitude of claims regarding his relationship to the Valleyheart property, his actual residence, the written notice he received, and the value of his personal property.

The elements of conversion are: (1) plaintiff's ownership or right to possession of the property at the time of the conversion; (2) defendant's conversion by wrongful act or disposition of plaintiff's property rights; and (3) damages. (*Hartford Financial Corp. v.*

15

*Burns* (1979) 96 Cal.App.3d 591, 598.) Conversion is a strict liability tort. (E.g., *Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 144; *Byer v. Canadian Bank of Commerce* (1937) 8 Cal.2d 297, 300 [misdelivery by a person entrusted with property of another constitutes a conversion of property, even if such person acted innocently and by mistake]; see also *City of Los Angeles v. Superior Court* (1978) 85 Cal.App.3d 143, 149 ["Conversion is a species of strict liability in which questions of good faith, lack of knowledge and motive are ordinarily immaterial"].)

Pryor is correct that, on its face, the fourth amended complaint alleged the elements of conversion. Pryor alleged that he was, and still is, the rightful owner of the personal property located at the Valleyheart property, and entitled to possession of the personal property. Contrary to Deutsche Bank's contentions, the fact that Pryor alleges he is a tenant or owner of the Valleyheart property is irrelevant in alleging a conversion claim. (5 Witkins, Summary of Cal. Law (10th ed. 2005) Torts, § 699, p. 1023 [the tort of conversion applies to personal property, not real property].) Pryor further stated that Deutsche Bank wrongfully and without just or reasonable cause took possession of the Valleyheart property, causing Pryor to be locked out of the property. Deutsche Bank, without notification, then sold a portion of Pryor's personal property. Pryor attempted to recover his personal property but was repeatedly denied by Deutsche Bank. (*Biard v. Olsheski* (1929) 102 Cal.App. 452, 454 ["no particular form of words is essential in averring a conversion, provided the fact of the conversion is sufficiently stated, and it is unnecessary to set forth in what way or by what means the conversion was accomplished"].) Lastly, as a proximate cause of Deutsche Bank's conversion, Pryor alleges he suffered $211,375 in damages.

Although Pryor alleged the elements of a conversion claim, the sham pleading doctrine commands a more thorough analysis of the failure to address the inconsistencies in his pleadings that relate to that cause of action. Pryor's claim of $211,375 in damages is fatally inconsistent with the Summary of Schedules he filed in bankruptcy court less than one year before the alleged conversion. Pryor has consistently stated throughout his

16

prior pleadings that $211,375 worth of his personal property was at the Valleyheart property. The trial court took judicial notice of Pryor's bankruptcy proceedings in April 2009, in which he declared under penalty of perjury that he only had $600 worth of personal property, aside from his bank accounts and a vehicle. This is not the only inconsistency in Pryor's conversion claim. Pryor alleged in the fourth amended complaint that when he moved into the Valleyheart property, he brought along his personal possessions acquired over 32 years of his adult life. Pryor offers no explanation for why he stated *under penalty of perjury* in April 2009 that the value of his personal property was $600, but that shortly thereafter the value of personal property, acquired over 32 years of adult life, had ballooned to $211,375. This inconsistency, in our view, is inextricably attached to the multitude of other unexplained inconsistencies revealed throughout the history of this litigation. Based on his extensive history of sham pleading, the trial court was free to reject the traditional rule that facts are accepted as true for the purposes of demurrer. The trial court did not err in sustaining Deutsche Bank's demurrer to the conversion cause of action.

### *Leave to Amend: Inadequate Record*

Pryor contends the trial court abused its discretion by not affording him the opportunity to amend his complaint. He further argues that even if the trial court did not abuse its discretion, he now has counsel who can amend the pleading to state a cause of action for conversion. We disagree.

In order to demonstrate an abuse of discretion by the trial court, an appellant is obliged "to provide an accurate record on appeal . . . . Failure to do so precludes an adequate review and results in affirmance of the trial court's determination. [Citation.]" (*Estrada v. Ramirez* (1999) 71 Cal.App.4th 618, 620, fn. 1.) Pryor has not provided a sufficient record to demonstrate error on the part of the trial court. The record does *not* contain the reporter's transcript or suitable substitute, such as a settled or agreed

17

statement, of the hearing on the demurrer. Without a record of oral proceedings in the trial court, Pryor cannot establish an abuse of discretion in denial of leave to amend.

Pryor points out in his briefing that he represented himself in the trial court, and suggests this circumstance is a basis for some relaxation of the pleading rules, now that he has counsel on appeal. The law is to the contrary—"mere self-representation is not a ground for exceptionally lenient treatment." (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984.) The rule requiring truthful pleading certainly should not be relaxed based upon whether a plaintiff has secured representation. The burden on the courts and the expense incurred by a defendant in a case involving sham pleadings are the same regardless of the status of representation of the plaintiff.

Although Pryor is correct that an appellate court may also grant leave to amend, he makes no persuasive argument as to how he could amend in the face of his hopelessly inconsistent pleadings. Pryor's appellate argument that he could amend to explain why the Cyprexx Services letter was insufficient to satisfy his rights as a tenant would not even remotely explain the multitude of inconsistent pleadings regarding his connection to the Valleyheart property. Previous allegations are read into the complaint under the sham pleading doctrine, which in this case means Pryor was not a tenant because he alleged he was an owner, investor, or workman on the premises. At oral argument, we inquired as to how Pryor could amend his complaint to correct the barrage of inconsistencies. Counsel argued that Pryor would amend his alleged damages from $211,375 to $600, which would be aligned with his declaration made under penalty of perjury at the bankruptcy court. We find the proposed amendment does not begin to address Pryor's failure to provide reasonable explanations for his inconsistencies in his prior pleading, its exhibits, judicially noticed documents, and pleadings in other lawsuits. As a result, we hold the trial court did not abuse its discretion in sustaining the demurrer without leave to amend.

18

**DISPOSITION**

The judgment is affirmed.  Costs on appeal are award to Deutsche Bank.


KRIEGLER, J.

We concur:


MOSK, Acting P. J.


GOODMAN, J. *

---

* Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.