Filed 11/3/16; pub. order 12/1/16 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| CHRISTINE FOXEN,<br><br>        Plaintiff and Appellant,<br><br>        v.<br><br>JOHN CARPENTER et al.,<br><br>        Defendants and Respondents. | B268820<br><br>(Los Angeles County<br> Super. Ct. No. BC576625) |

        APPEAL from the judgment of the Superior Court of Los Angeles County.  Elizabeth Allen White, Judge.  Affirmed.

        The Business Legal Group and Russell M. Frandsen for Plaintiff and Appellant.

        Nemecek & Cole, Jonathan B. Cole, Mark Schaeffer and Amanda M. Moghaddam for Defendants and Respondents.


* * * * * * * * * *

Plaintiff and appellant Christine Foxen sued her former attorneys, defendants and respondents John Carpenter, Paul Zuckerman, Nicholas Rowley and Carpenter, Zuckerman & Rowley, LLP, who had represented her in a personal injury action. The trial court sustained defendants' demurrer to plaintiff's operative first amended complaint on the basis of the statute of limitations. We conclude all of plaintiff's causes of action are time-barred as a matter of law, and therefore affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

On March 25, 2015, plaintiff filed this action against defendants alleging eight causes of action arising from alleged misconduct during the course of the parties' attorney-client relationship. Following a demurrer by defendants to the original complaint, plaintiff filed her operative first amended complaint which alleges 10 causes of action: (1) declaratory relief; (2) breach of fiduciary duty; (3) breach of contract/fee agreement; (4) breach of contract/personal injury lien; (5) unfair and deceptive business practices; (6) fraud; (7) conversion; (8) breach of the implied covenant of good faith and fair dealing; (9) money had and received; and (10) accounting.

Defendants again demurred, arguing primarily that plaintiff's claims were time-barred. After oral argument, the court sustained defendants' demurrer with leave to amend. Plaintiff chose not to amend, and a dismissal of plaintiff's action was entered October 15, 2015. This appeal followed.

On appeal from a judgment dismissing an action after the sustaining of a demurrer, our review is de novo. (*Aryeh v. Canon Business Solutions, Inc*. (2013) 55 Cal.4th 1185, 1191.) For the limited purpose of reviewing the propriety of the trial court's ruling, we accept as true all well-pled factual allegations in the

2

operative complaint, as well as any facts that may be reasonably implied or inferred from those expressly alleged.  (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)  We also consider the exhibits attached to the pleading.  "[T]o the extent the factual allegations conflict with the content of the exhibits to the complaint, we rely on and accept as true the contents of the exhibits and treat as surplusage the pleader's allegations as to the legal effect of the exhibits."  (See *Barnett v. Fireman's Fund Ins. Co.* (2001) 90 Cal.App.4th 500, 505.)  We do not "however, assume the truth of contentions, deductions or conclusions of law."  (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967.)

Our factual summary is drawn from the allegations of the operative first amended complaint, including the attached exhibits, according to this well-established standard.

In 2009, plaintiff suffered severe injuries in an auto accident.  Plaintiff hired defendants to represent her in a lawsuit against the other driver (hereafter "the personal injury action").  Plaintiff signed a one-page retainer and fee agreement with defendants (hereafter "the fee agreement").  The fee agreement is attached and incorporated by reference as exhibit A to the first amended complaint.  The fee agreement "does not meet the requirements" of Business and Professions Code section 6147.

The fee agreement provides, in relevant part, that defendants would represent plaintiff in the personal injury action, their entitlement to fees was contingent on the recovery of damages for plaintiff, the amount of the fee would be 40 percent of the gross recovery, and litigation costs would be advanced by defendants in their discretion, but reimbursed by plaintiff "upon recovery and in addition to attorney fees."  The fee agreement

3

also granted defendants "a lien on any settlement, award or judgment" to ensure payment of fees and costs actually incurred.

The fee agreement further provides that plaintiff authorized defendants to deposit the proceeds of any recovery into their client trust account "and distribute funds in accordance with the terms of this agreement."

The personal injury action proceeded to trial in January 2011. During trial, the defendants in that action offered to settle with plaintiff for $5 million. Her counsel, defendants here, advised plaintiff to reject the settlement offer, because they believed the jury would award a larger sum. Plaintiff rejected the settlement offer and the jury returned a verdict of $2.3 million.

After the verdict, defendants filed an action on behalf of plaintiff's husband for loss of consortium.[1] The parties to the personal injury action then engaged in settlement discussions in an attempt to reach a resolution of both plaintiff's claim and her husband's claim. A settlement conference took place at the courthouse and both plaintiff and her spouse attended. Defendants occasionally spoke with plaintiff and her husband during the conference but "never discussed the substance of the negotiations." The claims of both plaintiff and her spouse were settled for the combined amount of $3 million. A written settlement agreement was executed on February 25, 2011.

The settlement checks, dated February 23, 2011, were tendered to defendants. Defendants did not submit "any kind of accounting" to plaintiff regarding the proposed disbursement. Instead, on March 2, 2011, defendants "wrongfully paid"

---

[1] Plaintiff's husband is not a party to this appeal.

4

themselves fees from the settlement funds as follows: $840,000 to the firm Carpenter, Zuckerman & Rowley, LLP, and $360,000 to Nicholas Rowley. Plaintiff did not learn of these payments until "after April 1, 2011."

Defendants further "wrongfully" charged plaintiff $934,141.95 in litigation costs. In April 2011, defendants gave plaintiff a "Proposed Disbursement" outlining those costs. The proposed disbursement is attached and incorporated by reference as exhibit B to the first amended complaint. The proposed disbursement itemizes the "gross settlement" of $3 million, less "attorney fees (40%)" of $1.2 million, litigation costs of $574,141.95, and "outstanding medical bills" of $360,000. The proposed disbursement itemizes the "final settlement" to plaintiff as $846,000.24, with the "net recovery to client" as $865,858.05 (which includes earlier advances and "loans" to plaintiff of $5,000, $6,000 and $8,857.81).

The proposed disbursement contains numerous fraudulent and improper charges, including, for example, expert fees for Ronald Fisk of $95,510 when Mr. Fisk only charged $60,480. Plaintiff was unable to discover and verify the false charges until September through December 2011 when various individuals, like Mr. Fisk, responded to plaintiff's inquiries directly about their work and the total amount of their respective charges in the personal injury action.

Defendants further wrongfully "induced" plaintiff to enter into and sign a personal injury lien with defendants and one of their "business associates" known as Excel Diagnostic Services (EDS). The personal injury lien is attached and incorporated by reference as exhibit C to the first amended complaint. EDS and defendants charged plaintiff for numerous fraudulent, improper

5

and inflated costs, including for "caregiver resources" and case management fees. Defendants also wrongfully charged plaintiff in excess of $100,000 for the services of Finlay Boag related to pre-trial focus groups, despite the fact that plaintiff never authorized the hiring of Finlay Boag either orally or in the fee agreement.

Defendants engaged in deceptive business practices, breached their agreements with plaintiff, and wrongfully withheld and converted to their own use funds owing to plaintiff in the approximate amount of $1,180,287.85.

## DISCUSSION

Plaintiff contends the trial court erred in concluding that the one-year statute of limitations set forth at Code of Civil Procedure section 340.6, subdivision (a) (hereafter section 340.6(a)) operates as a time-bar to her claims against her former attorneys for declaratory relief, breach of contract, unfair business practices, conversion, breach of the implied covenant, money had and received, and for an accounting (causes of action 1, 3, 4, 5, 7, 8, 9 & 10).[2]

As relevant here, section 340.6(a) provides that "[a]n action against an attorney for a wrongful act or omission, other than for

---

[2]    In her opening brief, plaintiff raises no argument regarding her second cause of action for breach of fiduciary duty or her sixth cause of action for fraud. Our review " 'is limited to issues which have been adequately raised and supported in [appellant's opening] brief.' [Citations.]" (*WA Southwest 2, LLC v. First American Title Ins. Co.* (2015) 240 Cal.App.4th 148, 155 (*WA Southwest*); accord, *Garcia v. McCutchen* (1997) 16 Cal.4th 469, 482, fn. 10; *Series AGI West Linn of Appian Group Investors DE, LLC v. Eves* (2013) 217 Cal.App.4th 156, 168.)

6

actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first."

Recently, in *Lee v. Hanley* (2015) 61 Cal.4th 1225, 1233 (*Lee*), our Supreme Court outlined the legislative history and purpose behind the enactment of section 340.6(a). "The Legislature enacted section 340.6(a) in 1977 amid rising legal malpractice insurance premiums." Before its enactment, "the limitations periods for malpractice lawsuits depended on the forms of action contained in a plaintiff's complaint." (*Lee,* at p. 1234.) "Under the old scheme, attorneys could not be certain of the applicable limitations period for potential claims of malpractice." (*Ibid.*) With section 340.6(a), "the Legislature intended to establish a limitations period that would apply *broadly to any claim concerning an attorney's violation of his or her professional obligations in the course of providing professional services regardless of how those claims were styled in the plaintiff's complaint.*" (*Lee,* at p. 1235, italics added.) Section 340.6(a) was enacted "to eliminate the former limitations scheme's dependence on the way a plaintiff styled his or her complaint." (*Lee,* at p. 1236.)

1. **Breach of Contract, Declaratory Relief, Money Had and Received, and Breach of the Implied Covenant of Good Faith and Fair Dealing**

Plaintiff maintains that her claims for breach of contract, declaratory relief, money had and received, and breach of the implied covenant of good faith and fair dealing are not governed

7

by section 340.6(a), but rather, by the four-year statute of limitations codified at Code of Civil Procedure section 337, applicable generally to claims based on a written instrument.

Plaintiff's first amended complaint contains numerous allegations of alleged misconduct by defendants in the handling of the personal injury action, including that defendants "wrongfully" paid themselves fees and that the fee agreement violated Business and Professions Code section 6147. Nevertheless, in her arguments before this court, plaintiff disavows any claim that the fee agreement was unconscionable or that defendants were not entitled to the 40 percent fees set forth in the fee agreement. Rather, plaintiff argues that her contract-based claims are based on the "alternative" allegations in her pleading that assume the validity of her agreements with defendants, and that she has only pled "garden-variety" breach of contract claims; claims that are based on defendants' withholding and converting additional funds from the settlement monies beyond the fees to which they were entitled under the fee agreement.

Plaintiff argues therefore that section 340.6(a) does not apply to her contract claims because they are not based on the quality of defendants' legal services, but on their breach of nonprofessional obligations generally owed by all persons who enter into contracts. In so arguing, plaintiff relies in large part on language in *Lee* where the Supreme Court explained that "[m]isconduct does not 'aris[e]' in the performance of professional services for purposes of section 340.6(a) merely because it occurs during the period of legal representation or because the representation brought the parties together and thus provided the attorney the opportunity to engage in the misconduct. To

8

hold otherwise would imply that section 340.6(a) bars claims unrelated to the Legislature's purposes in enacting section 340.6(a)—for example, claims that an attorney stole from or sexually battered a client while the attorney was providing legal advice." (*Lee*, *supra*, 61 Cal.4th at p. 1238.)

We do not agree that *Lee* requires reversal in this case. Plaintiff's position is directly contradicted by *Lee* in which the court explained that "the attorney-client relationship often requires attorneys to provide nonlegal professional services such as accounting, bookkeeping, and holding property in trust. [Citation.] Indeed, the training and regulation that make the practice of law a profession, as well as the grounds on which an attorney may be disciplined *as an attorney*, include professional obligations that go beyond duties of competence associated with dispensing legal advice or advocating for clients in dispute resolution. [Citation.] In light of the Legislature's intent that section 340.6(a) cover more than claims for legal malpractice, the term 'professional services' is best understood to include nonlegal services governed by an attorney's professional obligations." (*Lee*, *supra*, 61 Cal.4th at p. 1237.) Plaintiff's effort to characterize her contract claims as arising from breaches of "ordinary," "nonlegal" duties is unavailing.

Plaintiff contends that *Lee* focuses on the "proof" necessary to establish a client's claim against a former attorney as determinative of what statute of limitations applies. She contends her allegations are sufficient for the pleading stage and that she is entitled to demonstrate, on the merits, that her claims do not rely on proof that defendants violated professional obligations and are therefore not time-barred.

*Lee* held that "section 340.6(a)'s time bar applies to claims whose merits necessarily depend on proof that an attorney violated a professional obligation in the course of providing professional services.  In this context, a 'professional obligation' is an obligation that an attorney has by virtue of being an attorney, such as fiduciary obligations, the obligation to perform competently, the obligation to perform the services contemplated in a legal services contract into which an attorney has entered, and the obligations embodied in the State Bar Rules of Professional Conduct."  (*Lee*, *supra*, 61 Cal.4th at p. 1237.)

Plaintiff's contract claims are based on defendants' alleged misconduct in allocating the settlement funds in the personal injury action, either because they incorrectly calculated the litigation costs, or because they breached their fiduciary duties to her by intentionally manipulating those charges in order to recover more monies than that to which they were entitled.  There is no other fair reading of the pleading and the attached exhibits.  In this case, plaintiff will not be able to establish her contract claims against defendants without demonstrating they breached professional duties owed to her, or nonlegal services closely associated with the performance of their professional duties as lawyers.  Section 340.6(a) therefore applies.

Plaintiff alleges she discovered the false charges which form the basis of her claims no later than December 2011, and therefore she was on notice at that time that defendants had wrongfully withheld funds from her.  Her failure to file this action within one year after that discovery is fatal to her claims.

2.    **Accounting**

In her opening brief, plaintiff argued generally that her claim for an accounting was timely and not governed by section

10

340.6(a), but she failed to identify what other statute of limitations applies or why the accounting claim was timely under that statute. In her reply brief, plaintiff briefly states that the accounting cause of action is ancillary to the breach of contract claims and is therefore governed by the four-year statute at Code of Civil Procedure section 337. As we explained in footnote 2 above, our review " 'is limited to issues which have been adequately raised and supported in [appellant's opening] brief.' [Citation.]" (*WA Southwest, supra*, 240 Cal.App.4th at p. 155.) However, even if the argument were properly before us, we would reject it on the merits. The claim is untimely for the same reasons explained in part 1 above.

## 3.    Conversion and Fraud

Plaintiff argues her cause of action for conversion is timely and governed by the three-year statute of limitations at Code of Civil Procedure section 338, subdivision (c). Indeed, plaintiff argues the statute had not yet expired when she filed this action in 2015 because the claim first accrued in 2013. Plaintiff argues her case is closely analogous to the facts of *Lee* in which the court concluded the plaintiff's claim for conversion against her former attorney was not necessarily barred by section 340.6(a). We are not persuaded.

In *Lee*, the plaintiff had retained the defendant attorney in a civil matter and had advanced the attorney $110,000 for attorney fees, plus another $10,000 for expert costs. The matter was settled and the defendant attorney sent the plaintiff a letter and a final invoice, expressly stating that the plaintiff had a credit balance of unearned fees in excess of $40,000. When the plaintiff asked her attorney to return those unearned fees, the

11

attorney contradicted his earlier letter, denied there was any credit balance, and refused to return any funds to the plaintiff.

*Lee* noted that for a demurrer based on the statute of limitations to be successful, the time-bar must " ' " ' "affirmatively appear on the face of the complaint; it is not enough that the complaint shows that the action may be barred." ' " ' " (*Lee*, *supra*, 61 Cal.4th at p. 1232.) Given that legal standard and the facts alleged, *Lee* concluded that the plaintiff's "complaint may be construed to allege that [the defendant] is liable for conversion for simply refusing to return an identifiable sum of [the plaintiff's] money." (*Id*. at p. 1240.) Because the defendant could arguably be held liable for simple conversion, similar to ordinary theft, section 340.6(a) did not necessarily apply, at the pleading stage, to bar the plaintiff's claim. (*Lee,* at p. 1240.) The court left open the possibility that the defendant attorney may prove the time-bar on summary judgment. (*Ibid*.)

Under no fair reading of the facts alleged in plaintiff's first amended complaint can it be inferred that defendants wrongfully converted an identifiable sum of money which was undisputedly owed to plaintiff. In any event, even assuming for the sake of argument that plaintiff's conversion claim is not governed by section 340.6(a), her claim is still time-barred under the three-year statute. Plaintiff's operative pleading contains express allegations that she discovered, no later than December 2011, the alleged "wrongful" charges and fraudulent withholding by defendants upon which her conversion claim is based. Under the three-year statute of limitations, her conversion claim had to be filed no later than December 2014. But, plaintiff did not file this action until March 25, 2015, over three months too late.

Plaintiff's delayed accrual argument cannot save her claim. Plaintiff argues she pled facts showing her conversion claim did not accrue until 2013, citing paragraph 67 which alleges that defendants "continued to knowingly, intentionally, and deceitfully make these false and fraudulent claims to Plaintiff Foxen and to third parties, with the intent of perpetrating a fraud on Plaintiff Foxen, in calendar year 2012 and calendar year 2013. In reliance on these fraudulent claims, Plaintiff Foxen deferred filing a lawsuit against [the law firm] until the present time with the filing of this complaint." This allegation, set forth in the fraud cause of action, is incorporated by reference into the conversion claim.

The allegation at best is a conclusion, contradicted by other more specific allegations in the pleading, including her discovery of the facts constituting the conversion by December 2011. It matters not, for purposes of the accrual of plaintiff's claims, that defendants continued to assert the validity of their distribution of the settlement monies. Plaintiff pled facts showing she discovered and believed, by December 2011, that defendants had wrongfully withheld and converted funds rightfully belonging to her. Nothing in paragraph 67 defeats or diminishes the effect of those admissions.

Moreover, plaintiff amended the allegations in paragraph 67 to delete certain facts which belie her claim of delayed accrual. In the original complaint, paragraph 67 stated: "Plaintiff Foxen has demanded in 2013 and 2014 that [defendants] return to Plaintiff Foxen the converted funds. On each occasion, [defendants] have refused to return to Plaintiff Foxen funds that [defendants] have converted to their own use and that rightfully belong to Plaintiff Foxen. On each such occasion in 2013 and

13

2014, [defendants] have falsely, knowingly and fraudulently claimed that they are entitled to retain such funds as their own. On each such occasion, [defendants] have committed anew a conversion of the funds that belong to Plaintiff Foxen." Plaintiff dropped the allegations that the operative conduct in 2013 was that she made additional demands to defendants to pay her the disputed monies, focusing in her amended pleading on the fact that defendants continued to make false representations about the validity of the disbursement. To repeat, the allegations do not diminish the import of her admissions about her knowledge of wrongdoing by December 2011.

Generally, an amended pleading supersedes the prior pleading. However, a well-established exception to this general rule applies " 'where an amended complaint attempts to avoid defects set forth in a prior complaint by ignoring them. The court may examine the prior complaint to ascertain whether the amended complaint is merely a sham.' [Citation.] The rationale for this rule is obvious. 'A pleader may not attempt to breathe life into a complaint by omitting relevant facts which made his previous complaint defective.' [Citation.] Moreover, any inconsistencies with prior pleadings must be explained; if the pleader fails to do so, the court may disregard the inconsistent allegations. [Citation.] Accordingly, a court is 'not bound to accept as true allegations contrary to factual allegations in former pleading[s] in the same case.' [Citation.] [¶] Furthermore, as a matter of law, allegations in a complaint must yield to contrary allegations contained in exhibits to a complaint." (*Vallejo Development Co. v. Beck Development Co.* (1994) 24 Cal.App.4th 929, 946; accord, *Larson v. UHS of Rancho Springs,*

*Inc.* (2014) 230 Cal.App.4th 336, 343-344.) Plaintiff has failed to state sufficient facts supporting a theory of delayed accrual.

As for plaintiff's cause of action for fraud, she failed to raise any argument concerning the claim in her opening brief, as we already noted above. (*WA Southwest, supra,* 240 Cal.App.4th at p. 155.) The argument is properly deemed forfeited. However, even if we considered the argument, we would deny it on the merits. Actions for actual fraud against an attorney are governed by the three-year statute of limitations codified at Code of Civil Procedure section 338, subdivision (d). (*Prakashpalan v. Engstrom, Lipscomb & Lack* (2014) 223 Cal.App.4th 1105, 1122-1123.) Plaintiff's cause of action for fraud is time-barred for the same reasons as her conversion cause of action. Plaintiff specifically pled she discovered the facts constituting the fraud no later than December 2011 but failed to file her action within three years of that discovery.

### 4. Unfair Business Practices

Plaintiff also contends her claim for unfair business practices pursuant to Business and Professions Code section 17200 is timely and not governed by section 340.6(a). However, in her opening brief, plaintiff did not identify the statute of limitations she contends is applicable, nor raise any argument how any such statute applied on the facts here. She first raised, in her reply brief, the contention that the four-year statute of limitations set forth at Business and Professions Code section 17208[3] applies. As we have already explained above, our review "

---

[3] Business and Professions Code section 17208 provides in relevant part: "Any action to enforce any cause of action pursuant to this chapter shall be commenced within four years after the cause of action accrued."

'is limited to issues which have been adequately raised and supported in [appellant's opening] brief.' [Citation.]" (*WA Southwest, supra*, 240 Cal.App.4th at p. 155.) Even if the argument were properly before us, we would reject it on the merits.

It is well established that "where more than one statute might apply to a particular claim, ' "a specific limitations provision prevails over a more general provision." [Citation.]' [Citation.]" (*Yee v. Cheung* (2013) 220 Cal.App.4th 184, 195; accord, *Vafi v. McCloskey* (2011) 193 Cal.App.4th 874, 881 [more specific statute of limitations at section 340.6(a) applied to claim for malicious prosecution against an attorney, rather than general statute applicable to malicious prosecution claims generally].) Section 340.6(a) is the more specific statute, codifying a statute of limitations for all claims, except actual fraud, against attorneys arising from their professional obligations. Section 340.6(a) therefore applies to plaintiff's unfair business practices claim. The claim is time-barred for the reasons explained in part 1 above.

5.     **Leave to Amend**

Plaintiff declined the opportunity to amend her pleading following the court's sustaining of defendants' demurrer to her first amended complaint. " 'It is the rule that when a plaintiff is given the opportunity to amend his complaint and elects not to do so, strict construction of the complaint is required and it must be presumed that the plaintiff has stated as strong a case as he can.' [Citations.]" (*Reynolds v. Bement* (2005) 36 Cal.4th 1075, 1091.) Plaintiff has forfeited any right to request leave to amend. (*Las Lomas Land Co., LLC v. City of Los Angeles* (2009) 177 Cal.App.4th 837, 861.)

16

## DISPOSITION

The judgment of dismissal entered October 15, 2015 in favor of defendants and respondents John Carpenter, Paul Zuckerman, Nicholas Rowley, and Carpenter, Zuckerman & Rowley, LLP is affirmed. Defendants and respondents shall recover costs of appeal.

GRIMES, J.

WE CONCUR:

RUBIN, Acting P. J.

FLIER, J.

17

Filed 12/1/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| CHRISTINE FOXEN,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>JOHN CARPENTER et al.,<br><br>    Defendants and Respondents. | B268820<br>(Los Angeles County<br> Super. Ct. No. BC576625)<br><br>**ORDER CERTIFYING<br>OPINION FOR<br>PUBLICATION**<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

The opinion in the above-entitled matter filed on November 3, 2016, was not certified for publication in the Official Reports.  For good cause, it now appears that the opinion should be published in the Official Reports and it is so ordered.

There is no change in the judgment.

_____

RUBIN, Acting P. J.         FLIER, J.         GRIMES, J.