Filed 3/4/21  Lee v. Newman CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

|  |  |
|---|---|
| SANG HOON LEE, | |
| Plaintiff and Appellant, | E073745 |
| v. | (Super.Ct.No. RIC1716036) |
| MICHAEL P. NEWMAN, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County. Daniel A. Ottolia, Judge. Affirmed.

Law Offices of Richard A. Lucal and Richard Alan Lucal for Plaintiff and Appellant.

Law Offices of Michael P. Newman, and Michael Paul Newman for Defendant and Appellant.

1

# I.

## INTRODUCTION

Michael P. Newman was a newly minted lawyer when he represented Sang Hoon Lee in insurance settlement negotiations after Lee was injured in an accident. During the negotiations, Newman admittedly made a series of mistakes and violated several professional obligations he owed Lee. Lee claims that Newman received a far larger share of the settlement proceeds than Lee intended, so he sued Newman for malpractice, conversion, and fraud. He also sought to void his retainer agreement with Newman.

After a bench trial, the trial court voided Lee's retainer agreement with Newman, found that Newman was only liable for conversion, and entered judgment in Lee's favor on that claim. Newman appeals both rulings on the ground that Lee's conversion claim and request to void the retainer are barred by the statute of limitations. Lee cross-appeals the trial court's ruling that Newman did not commit fraud against Lee, as well as its order awarding Newman a portion of his claimed fees instead of disgorging them entirely.

We affirm the judgment.

# II.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Facts*

In 2014, shortly after Newman was admitted to the bar, Arms Trans dba Arms Logistics and Caravan hired him as its in-house counsel. In December 2014, Lee, who was working for Arms as an independent contractor, got into an accident while driving on

2

the job.  Lee suffered serious injuries that made him unable to work.  The other driver worked for Belena Transport.  Belena's insurance carrier found that Belena's driver was at fault.

Because he was unable to work, Lee discussed his options with Arms's co-owner, Lindy Park, in early 2015.  Park was concerned that Lee might sue Arms for misclassifying him as an independent contractor instead of an employee.  She offered to pay Lee a salary, have Newman assist Lee with his personal injury claim, and provide Lee translation[1] and transportation services for his medical and personal needs.  Lee agreed to Park's terms of employment.

Newman unsuccessfully tried to negotiate a settlement with Belena's insurance carrier throughout 2015.  In January 2016, Belena requested a signed contingency fee retainer agreement between Lee and Newman in order to process the claim.  Newman sent Park, but not Lee, a form engagement letter for Lee to sign, explaining that Lee had to sign it for Newman to continue representing him.  The letter's spaces for Newsman's contingency fee percentages were left blank because  Newman wanted Arms to determine the fee he would receive.

Around the same time, Newman had Lee sign the retainer letter.  Lee is a native Korean speaker and does not speak English fluently, yet Newman did not provide a translator for Lee.  Newman left his fee percentages blank and did not explain the letter to Lee.  The retainer also did not inform Lee that Newman's fee was negotiable.  After Lee

---

[1]  Lee's native language is Korean, and he does not speak English fluently.

3

signed the retainer, without telling Lee or Arms, Newman filled in the space for his fee percentage so it provided that he would receive 5 percent if the case settled before litigation. He then sent the form to Belena's insurance carrier and resumed the settlement discussions.

According to Newman, he later reached an agreement with Arms that he would receive 15 percent of any settlement. Lee signed an amended retainer agreement, which reflected Newman's agreement with Park that Newman would receive a 15 percent contingency fee if the case settled.

Park and Arms's other co-owner, David Hudrlik, claimed that he and Newman reached an agreement in February 2016 with Newman—but without Lee—that Newman would receive a $20,000 flat fee and Park would repay Arms $130,000. Park later explained the agreement to Lee, which he agreed to.

In February 2016, Park e-mailed Newman a series of questions. She asked if Newman's retainer with Lee should be changed because "it currently says 15% on that agreement." Newman responded, "I wouldn't have taken the 15% anyways, better to leave [*sic*] to show discount."

Newman settled Lee's case for $1,000,000 in March 2016. Before doing so, however, Newman never spoke with Lee about the 15 percent contingency, and thus never confirmed that Lee agreed to it. According to Newman, all of his discussions about his fee were with Arms's owners. Newman did not discuss his purported 15 percent contingency fee with Lee until the settlement proceeds had been distributed.

4

While the settlement was being approved, Lee and Park negotiated a separate deal. They executed an agreement providing that Lee would waive claims against Arms and would pay Arms $130,000 from the settlement proceeds to reimburse Arms for the salary and services that Arms had provided Lee since his accident.

Newman, however, intended to take $150,000 from the settlement funds— irrespective of what Lee agreed to pay Arms—because Lee's retainer provided that he would receive 15 percent of any settlement. In March 2016, after Newman received the $1,000,000 settlement check, he sent Lee a letter breaking down Lee's debts. The letter stated that that Lee owed Newman $150,000 and Arms $130,000.

In April 2016, shortly after the settlement check cleared in Newman's client trust account, Newman paid himself $150,000 from the settlement funds and placed the funds in his firm's general account.

In July 2016, Hudrlik e-mailed Newman, stating that he thought there was a "communication misunderstanding." Hudrlik explained that, based on Newman's e-mail in February telling Park they should not revise Lee's retainer agreement, Park and Lee agreed in March or April that Lee would pay Arms $130,000 and Newman $20,000. Hudrlik explained that Lee did not agree to pay Newman $150,000 based on Newman's February e-mail and "what was explained to him in Korean."

On August 23, 2016, Lee e-mailed Newman, explaining that he did not agree to pay Newman $150,000. Lee explained that he thought whatever Newman deducted from the settlement funds would cover what Lee owed Arms as well as Newman's fee, which

5

Lee thought would be $20,000. Newman responded, "[s]orry that you feel there is a problem with the fees," and suggested that Lee request fee arbitration from the State Bar of California. Lee directed Newman not to pay Arms until he spoke with Park. Park told Lee that she thought Arms was supposed to receive $130,000 from the settlement and that Newman would receive $20,000.

B. *Procedural history*

On August 28, 2017, Lee sued Newman for conversion, fraud, and legal malpractice. Lee generally alleged that he did not agree to pay Newman a 15 percent contingency fee, but rather they agreed that Newman would accept a $20,000 fee. Lee sought to void his retainers with Newman because they did not state that Newman's "fee is not set by law but is negotiable between attorney and client" as Business and Professions Code section 6147 (section 6147) requires.

The case was tried by a bench trial. The trial court granted Newman's motion for nonsuit on Lee's malpractice claim, finding it was barred by the one-year statute of limitations[2], but denied the motion as to Lee's other claims. (See Code Civ. Proc., § 340.6, subd. (a).) The trial court found that Lee failed to prove that Newman committed fraud. The trial court also ruled that Lee's conversion claim was timely filed, Lee proved that Newman accepted a flat fee of $20,000, and thus Newman wrongfully converted $130,000 of Lee's settlement funds by keeping $150,000 of the funds. The trial court voided Lee's retainer with Newman under section 6147, subdivision (b), but found that

---

[2] Lee does not appeal this ruling.

Newman was nonetheless entitled to $20,000 for his services. The trial court entered judgment for Lee on his conversion claim and awarded him $130,000 plus pre-judgment interest.

Newman timely appealed, and Lee timely cross-appealed.

III.

DISCUSSION

A. *Newman's Appeal*

Newman appeals the trial court's finding that he committed conversion and its order voiding Lee's retainer agreement. Newman contends (1) Lee's conversion claim and request to void his retainer agreement were barred by the statute of limitations, and (2) the trial court erred by finding him liable for conversion. Newman also appeals the trial court's "gratuitous findings" in the statement of decision that he committed several instances of malpractice, which he contends contributed to the trial court's finding him liable for conversion.

At the outset, we reject Lee's argument that Newman waived his arguments on appeal because he failed to discuss unfavorable evidence. "An appellant . . . who cites and discusses *only* evidence in her favor fails to demonstrate any error and waives the contention that the evidence is insufficient to support the judgment. [Citations.]" (*Rayii v. Gatica* (2013) 218 Cal.App.4th 1402, 1408, italics added.) Newman adequately discusses and cites the record in his opening brief. Although Newman did not discuss some evidence unfavorable to him and thus presented a somewhat self-serving picture of

7

the evidence, his recitation of the facts is not so one-sided that he waived his arguments on appeal. (See *Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881 [appellant waives argument that judgment is not supported by the evidence by presenting "*merely their own evidence*"].)

1. *Lee's Conversion Claim Was Timely Filed*

There is no dispute that Lee filed this case on August 28, 2017, over a year after his fee dispute with Newman arose. Newman argues the one-year statute of limitations for attorney malpractice claims applies and thus Lee's conversion claim was untimely filed. Lee contends, and the trial court agreed, that he timely filed his conversion claim because the three-year statute of limitations for conversion claims applies. (Code Civ. Proc. § 338, subd. (c) [statute of limitation for "[a]n action for taking, detaining, or injuring goods or chattels, including actions for the specific recovery of personal property" is three years].) Reviewing the issue de novo, we conclude Lee's conversion claim was timely filed. (See *Ventura County Nat. Bank v. Macker* (1996) 49 Cal.App.4th 1528, 1530 [trial court's determination of which statute of limitations applies is reviewed de novo].)

Code of Civil Procedure section 340.6, subdivision (a) provides a one-year statute of limitations for "[a]n action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services." There is no dispute that Lee's conversion claim is against an attorney for an alleged wrongful act or

omission.  The parties only disagree on whether the claim arose from Newman's "performance of professional services."  We conclude that it did not.

*Lee v. Hanley* (2015) 61 Cal.4th 1225 (*Hanley*), and *Foxen v. Carpenter* (2016) 6 Cal.App.5th 284 (*Foxen*), guide our analysis.  In *Hanley*, a client alleged that she advanced funds to her attorney, Hanley, to cover the costs of her lawsuit.  (*Hanley*, *supra*, at pp. 1229-1230.)  After the case settled, Hanley sent the client an invoice stating that she had a credit balance of about $46,000 for unused attorney's fees.  (*Ibid*.)  She asked Hanley for a refund of the credit balance, but he denied there was any credit balance and refused to return any funds to the client.  (*Ibid*.)  The client hired a new attorney, who sent Hanley a letter demanding that he refund the client.  (*Ibid*.)  Hanley again refused.  (*Ibid*.)

Over a year later, the client sued Hanley for conversion.  (*Hanley*, *supra*, 61 Cal.4th at p. 1230.)  Hanley demurred, arguing that the claim was barred by section 340.6, subdivision (a)'s one-year statute of limitations.  (*Id*. at p. 1230.)  The trial court agreed and sustained Hanley's demurrer without leave to amend.  (*Ibid*.)

Our Supreme Court found that the client's conversion claim was not governed by section 340.6, subdivision (a).  (*Hanley*, *supra*, 61 Cal.4th at p. 1230.)  The *Hanley* court held that the statute applies "when the merits of the claim will necessarily depend on proof that an attorney violated a professional obligation—that is, an obligation the attorney has *by virtue of* being an attorney—in the course of providing professional services" (*id*. at p. 1229) as opposed to a "generally applicable nonprofessional

9

obligation." (*Id*. at pp. 1238.)  Thus, the *Hanley* court held that "section 340.6(a) does not bar a claim for wrongdoing—for example, garden-variety theft—that does not require proof that the attorney has violated a professional obligation." (*Id*. at p. 1237.)  In other words, *Hanley* held that if the attorney's alleged misconduct violated an nonprofessional obligation the attorney owed, but also violated a professional obligation the attorney owed by virtue of being an attorney, section 340.6, subdivision (a) does not apply. (*Hanley*, *supra*, at pp. 1236-1237.)

The client's conversion claim in *Hanley* did not require that proof that her attorney violated a professional obligation because she alleged Hanley was liable for conversion for refusing to return her money.  Her claim therefore did "not necessarily depend on proof that Hanley violated a professional obligation in the course of providing professional services" because she simply alleged that she advanced her attorney money and he refused to return it.  (*Hanley*, *supra*, 61 Cal.4th at p. 1240.)  The claim therefore did not *necessarily depend* on any allegation that the attorney violated a professional obligation to his client.  (*Ibid*.)

In *Foxen*, *supra*, 6 Cal.App.5th 284, settlement funds were distributed to the attorney-defendants.  (*Id*. at p. 289.)  Their client alleged, among other things, that the defendants wrongfully charged her for inflated, improper, and fraudulent litigation costs, and thus "'wrongfully paid' themselves fees from the settlement funds." (*Ibid*.) Years later, she sued the defendants on various theories, including conversion.  (*Id*. at p. 288.)  The defendants demurred on the ground that her claims were governed—and

10

barred—by the one-year statute of limitations in section 340.6, subdivision (a). (*Foxen*, *supra*, at p. 290.) The trial court agreed and sustained the demurrer without leave to amend. (*Ibid.*)

Rejecting the client's argument that *Hanley* controlled, the *Foxen* court held the client's conversion claim was barred by section 340.6, subdivision (a)'s one-year statute of limitations. (*Foxen*, *supra*, 6 Cal.App.5th at p. 293.) The court distinguished *Hanley* on the ground that the defendant in *Hanley* "could arguably be held liable for simple conversion, similar to ordinary theft," because he "'simply refus[ed]'" to return the client's money. (*Ibid.*) By contrast, the *Foxen* defendants did not "wrongfully convert[] an identifiable sum of money which was undisputedly owed to plaintiff." (*Id.* at p. 294.) Instead, the client alleged they wrongfully paid themselves more than the client owed from their client's settlement funds by overcharging the client an unidentified amount. (*Ibid.*) Thus, the plaintiff's conversion claim was subject to section 340.6, subdivision (a)'s one-year statute of limitations. (*Id.* at p. 293.)

Here, Lee asserted that he agreed to pay Newman a $20,000 flat fee, not a 15 percent contingency fee, and refused to refund $130,000 that Newman kept from the settlement funds. Newman's alleged conduct may have violated his professional obligations that he owed Lee. But Lee could succeed on his conversion claim by proving that Newman agreed to take only $20,000 from the settlement funds, but he instead kept $150,000. Put another way, Lee's conversion claim did not require Lee to prove that Newman violated any professional obligation. Lee's conversion claim thus does not

11

"necessarily depend on proof that [Newman] violated a professional obligation."
(*Hanley*, *supra*, 61 Cal.4th at p. 1240.)

    2. *Substantial Evidence Supports the Trial Court's Finding that Newman Was Liable for Conversion*

Newman contends the trial court's finding him liable for conversion is not supported by substantial evidence. We disagree.

    a. *Applicable Law and Standard of Review*

We review the trial court's decision after a bench trial for substantial evidence. (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 630.) Substantial evidence is "evidence 'of ponderable legal significance, . . . reasonable in nature, credible, and of solid value.'" (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873, italics omitted.) When reviewing the trial court's judgment for substantial evidence, we "consider all of the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference, and resolving conflicts in support of the [findings]. [Citations.]" (*Howard v. Owens Corning*, *supra*, at p. 630.) We liberally construe the trial court's factual findings to support the judgment. (*Winchell v. Lambert* (1956) 146 Cal.App.2d 575, 581.) Thus, "any conflict in the evidence or reasonable inferences to be drawn from the facts will be resolved in support of the determination of the trial court decision. [Citations.]" (*In re Marriage of Hoffmeister* (1987) 191 Cal.App.3d 351, 358.) We may not reweigh the evidence and are bound by the trial court's credibility determinations. (*Heller v. Pillsbury Madison & Sutro* (1996) 50 Cal.App.4th 1367,

12

1384.)

On substantial evidence review, "[t]he ultimate determination is whether a *reasonable* trier of fact could have found for the respondent based on the *whole* record. [Citation.] While substantial evidence may consist of inferences, such inferences must be 'a product of logic and reason' and 'must rest on the evidence' [citation]; inferences that are the result of mere speculation or conjecture cannot support a finding [citations]." (*Kuhn v. Department of General Services* (1994) 22 Cal.App.4th 1627, 1633.)

b. Analysis

"'Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages. Conversion is a strict liability tort. The foundation of the action rests neither in the knowledge nor the intent of the defendant. Instead, the tort consists in the breach of an absolute duty; the act of conversion itself is tortious. Therefore, questions of the defendant's good faith, lack of knowledge, and motive are ordinarily immaterial. [Citations.]'" (*Los Angeles Federal Credit Union v. Madatyan* (2012) 209 Cal.App.4th 1383, 1387.)

It is undisputed that Newman kept $150,000 of Lee's settlement funds. Lee, Park, and Hurdlik testified that the agreement the parties reached was that Newman would receive a $20,000 flat fee, not 15 percent of any settlement. A contemporaneous e-mail from Newman supports their testimony. When Park e-mailed Newman and asked if

13

Newman's retainer with Lee should be changed because "it currently says 15% on that agreement," Newman responded, "*I wouldn't have taken the 15% anyways*, better to [*sic*] leave to show discount." (Italics added.) This strongly supports the testimony of Lee, Park, and Hurdlik that they did not agree that Newman would receive a 15 percent contingency fee.

Substantial evidence thus supports the trial court's finding that (1) Lee had a right to the $130,000 that Newman kept; (2) Newman wrongfully refused to return those funds to Lee; and, as a result (3) Lee suffered $130,000 in damages. We therefore affirm the trial court's order finding Newman liable for conversion.

Newman contends that, even if Lee proved his conversion claim, reversal is required because the trial court erroneously denied his motions in limine to exclude all evidence of his malpractice. Newman argued the evidence was relevant only to Lee's time-barred malpractice claim, yet was highly prejudicial and irrelevant to his conversion and fraud claims. The trial court disagreed and allowed evidence about Newman's alleged malpractice.

In its statement of decision, the trial court found Newman violated his professional and ethical responsibilities to Lee by: (1) having a conflict of interest because he simultaneously represented Arms and Lee; (2) failing to obtain Lee's informed consent to Newman's representation despite the conflict; (3) failing to provide Lee "with a fully filled out contingency fee contract" before obtaining his signature; (4) failing to inform Lee that the fee was negotiable; (5) failing to inform Lee that he did not carry malpractice

14

insurance; and (6) failing to inform Lee of the 15 percent contingency fee. The trial court found that the third, fourth, fifth, and sixth breaches violated section 6147.

Newman contends the trial court's reliance on the evidence of his malpractice and its "gratuitous findings" about his "professional and ethical breaches" in its statement of decision unduly affected the trial court's analysis of Lee's conversion claim.

"Under Evidence Code section 352, the probative value of the proffered evidence must not be substantially outweighed by the probability that its admission would create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (*People v. Cole* (2004) 33 Cal.4th 1158, 1195.) Because the decision to admit or exclude evidence under Evidence Code section 352 is committed to the trial court's discretion, we will not disturb a trial court's exercise of that discretion "'"except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice."'" (*Uspenskaya v. Meline* (2015) 241 Cal.App.4th 996, 1000-1001.)

We conclude the trial court did not abuse its discretion by admitting evidence of Newman's malpractice. The trial court reasonably found that the evidence was relevant to Lee's malpractice claim, which the court did not dismiss until granting Newman's motion for a nonsuit on the claim after the close of Lee's case.

The trial court's findings that Newman committed professional errors by violating section 6147 in four ways[3] was were relevant to its determination of what fee Newman should receive despite the errors. (See § 6147, subd. (b) ["Failure to comply with any provision of this section renders the agreement voidable at the option of the plaintiff, and the attorney shall thereupon be entitled to collect a reasonable fee"].) As the trial court found, Newman's services to Lee "did have value," and thus he was "entitled to receive the reasonable, quantum meruit value of his services" under section 6147.

It is unclear why the trial court made findings that Newman "breached the Rules of Professional Conduct with respect to conflicts of interest" given that they were irrelevant to the court's analysis of Lee's conversion claim, the court dismissed Lee's malpractice claim, and found (without explanation) that Newman did not commit fraud. Lee does not address the issue and thus offers us no guidance.

In any event, Newman fails to persuade us that the trial court's findings about his conflicts of interest in violation of the Rules of Professional Conduct were prejudicial. "[E]rroneous conclusions of law and unsupported or erroneous findings of fact will be disregarded as being harmless error if the judgment as rendered can be sustained on the supported and proper findings made by the trial court." (*Hay v. Allen* (1952) 112 Cal.App.2d 676, 681.) The improper admission of evidence in a bench trial is likewise

---

[3] These violations were Newman's failure to: (1) provide Lee "with a fully filled out contingency fee contract" before obtaining his signature; (2) inform Lee that the fee was negotiable; (3) inform Lee that he did not carry malpractice insurance; and (4) inform Lee of the 15 percent contingency fee.

harmless if the trial court likely would have reached the same verdict absent the improperly admitted evidence.  (See *Quality Wash Group V, Ltd. v. Hallak* (1996) 50 Cal.App.4th 1687, 1699.)

Even if the trial court erroneously admitted evidence about Newman's malpractice and its findings about his malpractice were "gratuitous," any resulting error was harmless.  Newman argues the trial court's findings and evidence about his malpractice affected his credibility, which in turn affected its verdict on Lee's conversion claim.  But there is no indication that the trial court relied on any evidence about Newman's malpractice in finding that he was liable for conversion.  Nothing in the trial court's analysis of Lee's conversion claim in its statement of decision or elsewhere suggests that it was affected by Newman's malpractice.  Newman does not point to anything in the record that indicates the trial court considered Newman's professional lapses in ruling against him on Lee's conversion claim.  As it stands, Newman's contention the trial court's "gratuitous findings" about his malpractice and its admission of evidence about that malpractice prejudiced him is entirely speculative.

Because it is not reasonably probable that the trial court would have reached a different decision on Lee's conversion claim absent the evidence and findings about Newman's malpractice, we conclude the trial court did not prejudicially err by admitting the evidence or making those findings.

### 3. *Lee's Request to Void His Retainer*

Lee moved to void his retainer with Newman under section 6147, subdivision (b) on the ground that it did not explain that Newman's contingency fee was negotiable, as section 6147, subdivision (a)(4) requires. Newman asserts—and Lee concedes—that Lee's request was barred by section 340.6, subdivision (a)'s one-year statute of limitations because Lee brought this malpractice claim more than a year after their dispute over the retainer arose. We agree.

Although neither party cites (and we cannot locate) any authority that directly addresses the issue, *Foxen* strongly suggests that a client's claim that an attorney's retainer agreement violates section 6147 is subject to a one year-statute of limitations under section 340.6, subdivision (a). In *Foxen*, part of the client's contract claims against her attorneys alleged that their fee agreement violated section 6147 in some unspecified way. (*Foxen*, *supra*, 6 Cal.App.5th at pp. 288, 291.) The *Foxen* court held that section 340.6, subdivision (a) applied to those claims because the client could not establish them "without demonstrating [that her attorneys] breached professional duties owed to her." (*Id*. at p. 292.)

As Lee concedes, his request to void his retainer with Newman necessarily turns on his assertion that the retainer did not state that Newman's fee was negotiable, as section 6147, subdivision (a)(4) requires. In other words, Lee claims that Newman failed to comply with a legally mandated professional obligation to Lee "in the performance of professional services." (Code Civ. Proc., § 340.6, subd. (a).) Section 340.6, subdivision

(a) therefore applies to Lee's request to void the retainer, so his request was untimely. The trial court's order voiding the retainer was harmless, however. The order has no effect on Lee's conversion claim, and Newman prevailed on Lee's remaining claims. Newman fails to show that the order voiding his retainer prejudiced him in any way.

B. *Lee's Appeal*

Lee contends the trial court erred by (1) finding that Newman did not commit fraud and (2) declining to disgorge all of Newman's fees "due to his substantial acts of fraud, ethical violations including conflicts of interest, and other willful misconduct." We disagree.

1. *Fraud*

a. *Applicable Law and Standard of Review*

"'The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.' [Citations.]" (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.)

b. *Analysis*

Substantial evidence supports the trial court's finding that Newman did not commit fraud. Newman unequivocally testified that he had an oral agreement with Arms that he would receive a 15 percent contingency fee. Newman further testified that he left

19

his contingency fee percentages blank in the retainer he had Lee sign because he wanted Arms to confirm their oral agreement in writing.

"[T]he essence of the fraud is the existence of an intent at the time of the promise not to perform it, and such intent is always a question of fact." (*Kejr v. Construction Engineers, Inc.* (1954) 128 Cal.App.2d 396, 400; accord, *Grant v. Segawa* (1941) 44 Cal.App.2d Supp. 945, 949 ["[W]hether a fraudulent intent exists is said to be a question of fact for a trial court rather than of law for an appellate tribunal"].) Moreover, "[t]he testimony of a single witness is sufficient to uphold a judgment even if it is contradicted by other evidence, inconsistent or false as to other portions." (*In re Frederick G.* (1979) 96 Cal.App.3d 353, 366.)

Newman's testimony was sufficient for the trial court to find that he did not intentionally misrepresent his contingency fee to Lee. As a result, substantial evidence supports the trial court's finding that Lee did not satisfy all of the elements required for his fraud claim. (See *Lazar v. Superior Court*, *supra*, 12 Cal.4th at p. 638 [fraud claim requires showing that defendant made intentional misrepresentation].) We therefore affirm the trial court's finding that Newman was not liable for fraud.

## 2. *Disgorgement*

The trial court awarded Lee $130,000, meaning that Newman was left with $20,000 of the $150,000 he kept from Lee's settlement funds. Lee contends the trial court erred by not disgorging the $20,000 from Newman.

Newman argues, however, that Lee forfeited the issue because he never requested disgorgement in the trial court. He correctly points out that Lee did not seek that relief in his complaint and did not raise the issue in the trial court. Lee provides no argument in response. We therefore conclude Lee forfeited any argument that the trial court should have disgorged all of Newman's fees. (See *Rancho Mirage Country Club Homeowners Assn. v. Hazelbaker* (2016) 2 Cal.App.5th 252, 264 [issues not raised in trial court are forfeited on appeal].)

## IV.

## DISPOSITION

The judgment is affirmed. Lee may recover his costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

RAMIREZ
P. J.

MENETREZ
J.

21